No. 14370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

HOWARD KOSTBADE,

            Plaintiff and Appellant,

    -vs-

WALLACE BUCKINGHAM,

            Defendant and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

      For Appellant:

      Longan and Holmstrom, Billings, Montana

      For Respondent:

      Anderson, Symmes, Brown, Gerbase, Cebull and Jones, Billings,
      Montana

---

                              Submitted on briefs:  November 3, 1978

                                        Decided: JAN 18 1979

Filed: JAN 18 1979

_Thomas J. Kearney_____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment on a breach of contract case involving the feeding of cattle. Trial was held on February 16, 1978, before the Honorable Jack D. Shanstrom, sitting without a jury, in the District Court of the Thirteenth Judicial District. The court filed its findings of fact and conclusions of law on March 29, 1978, and a judgment for plaintiff in the amount of $1,712.69 plus costs was entered on April 25, 1978. Plaintiff appeals the judgment inasmuch as he sought judgment in the amount of $4,690.26.

Plaintiff-appellant owns a commercial feedlot near Laurel, Montana, which is managed and operated by Al Herden, a copartner. During early November 1976, defendant-respondent contacted Herden with regard to feeding a number of respondent's calves during the winter months of 1976-77. As a result of the conversation, respondent, who lives in the White Sulphur Springs, Montana, area, traveled to Laurel and discussed with Herden, as agent for appellant, the various terms and conditions of the feeding operation. At that time Herden and respondent entered into an oral contract for the feeding of respondent's cattle.

Pursuant to the oral contract respondent delivered to the Laurel feedlot 109 head of steers on November 19, 1976; 12 head of steers and 77 head of heifers on November 23, 1976; and 46 head of heifers and 71 head of steers on December 31, 1976. On December 11, 1976, 88 head of steers were sold from the feedlot and the remaining cattle were removed on January 26, 1977. The 88 head of steers sold from the feedlot were the better cattle, and many of them had been on the feedlot only a period of approximately 20 days.

In the life of the contract respondent was billed for appellant's services in feeding his cattle on a semi-monthly basis. Bills for the periods ending November 30, December 15, and December 31, 1976, totaling $5,048.57 were paid by respondent without protest. When respondent received these bills he also received a breakdown showing the total weight and cost of each feed ingredient which was fed to his cattle for that period.

After receiving a feed statement and bill for the period ending January 15, 1977, respondent called and then went to Laurel on January 25 to obtain a check weight on his cattle, believing that they could not possibly have consumed the amount of feed for which he had been charged for that period. There was considerable discussion between Herden and respondent at that time. Respondent alleged that the amount charged, by his figures over 90¢ per cow, violated their agreement. Herden figured the cost as approximately 45¢ per head. According to respondent's testimony, when his wife first called the feedlot and when he first talked to Herden, they had been assured that the cost would not be above 36¢ per pound of gain. This alleged assurance on the part of Herden was the reason for the difficulties which arose, and at the end of this discussion on the 25th, respondent decided to remove his cattle from appellant's feedlot.

Respondent then made arrangements for trucks to remove the cattle from appellant's feedlot and take them to another feedlot in the same area. After the removal of approximately two loads of cattle, Herden would not permit respondent to remove any more cattle until the total bill was paid. Respondent issued a check made out to appellant in the

-3-

amount of $4,690.26. This check was tendered to Herden and the remaining cattle removed from the feedlot. Shortly thereafter respondent stopped payment on the check. He later tendered to appellant a check in the amount of $2,180.16, the amount he alleged was or would have been due appellant at the rate of 36¢ per pound of gain. This check was not negotiated by appellant. In his suit appellant sought the total amount of $4,690.26.

The sole issue before this Court is whether the trial court's findings of fact, conclusions of law, and judgment are substantiated by substantial evidence.

Rule 52(a), M.R.Civ.P., states in pertinent part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

This Court, in describing its function in reviewing the findings of fact and conclusions of law of a District Court sitting without a jury, has many times set forth the following:

"This Court's function . . . is not to substitute its judgment in place of the trier of facts, but rather it is 'confined to determining whether there is substantial credible evidence to support' the findings of fact and conclusions of law. (Citations omitted.) Although conflicts may exist in the evidence presented, it is the duty and function of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence. (Citations omitted.)" Olson v. Westfork Properties (1976), 171 Mont. 154, 557 P.2d 821, 823, 33 St.Rep. 1133, 1135. (Emphasis added.)

The Court then went on to define substantial evidence:

"Substantial evidence has been defined by this Court as such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence. The evidence may be inherently weak and still be deemed 'substantial', and one witness may be sufficient to establish the preponderance of a case. (Citations omitted.)" Olson, 557 P.2d at 823, 33 St.Rep. at 1136.

-4-

With the above guidelines in mind, we note that the trial court was required to decide whether or not appellant met the burden of proving the terms he claims to have comprised the contract. Respondent denied having agreed to pay a price per pound of gain in excess of 36¢. The trial court did not rewrite the contract between appellant and respondent; it simply found from the testimony that appellant through his agent and respondent entered into an oral contract and agreed that the maximum price per pound of gain would not exceed 36¢ per pound. The trial court also determined that the amount charged by appellant did in fact exceed the maximum price of 36¢ per pound of gain and awarded judgment to appellant in the amount equivalent to the agreed upon price of 36¢ per pound of gain after deducting monies previously paid by respondent.

Appellant recognizes the function of this Court in reviewing the findings of fact and conclusions of law of the District Court. Yet, after recognizing that authority, he denies that the findings and conclusions show a clear preponderance of evidence. At the very most, all that can be said in the instant case is that the evidence was conflicting. In attacking the court's conclusion that the oral contract between the parties contained a maximum cost per pound of gain of 36¢, appellant sets forth the testimony of respondent given on cross-examination. However, on direct examination, respondent did testify that appellant's agent Herden told him that the "maximum would be 36¢ per pound." In addition respondent's wife testified she was concerned about the cost of feeding cattle in a commercial feedlot and testified that on several occasions Herden advised her the maximum cost would not exceed 36¢ per pound. The trial

court, in its findings of fact, found the maximum to be 36¢ per pound, the figure it found Herden used in advising respondent.

Appellant alleges that the trial court erred in its award of $1,712.69 plus costs in view of the fact that respondent had tendered a payment of $2,800 to resolve the conflict. However, this tendered offer of respondent, refused by appellant, was merely to resolve the conflict between the parties. We find no error in the sum arrived at by the trial court in fixing the $1,712.69 figure.

The weight of the evidence and the credibility of the witnesses, where that evidence was conflicting, was a matter for the trial court's determination. We find no clear preponderance of evidence against its findings.

Judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-6-