No. 79-92

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE DOLSEN COMPANY,

Plaintiff and Appellant,

vs.

THE IMPERIAL CATTLE CO.,
A Montana Corporation, JAMES
EDMISTON and PHILLIS EDMISTON, et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable James Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Moore and Doran, Kalispell, Montana

For Respondents:

Christopher B.Swartley, Missoula, Montana
George Harris, Missoula, Montana

---

Submitted on briefs: December 17, 1980

Decided: MAR 4 - 1981

Filed: MAR 4 - 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by Dolson, plaintiff, after an adverse judgment of the Flathead County District Court.

In 1973 the Imperial Cattle Company (Imperial) entered into seven lease agreements with the Dolson Company (Dolson), a Washington corporation, for the lease of dairy cattle. Approximately 520 dairy cows were transferred to Imperial. Two of the seven leases were concluded prior to the settlement negotiations which underlie this action. All but one of the remaining five leases were personally guaranteed by defendants Lillithun and Edmiston, principals in the Imperial Cattle Company.

During 1974 Imperial suffered major financial reverses and notified Dolson in October of that year that it would be unable to further perform on any of the remaining five leases. The parties proceeded to negotiations, agreeing to a "Possession Agreement." By the terms of that agreement Dolson would reassume possession of the dairy cattle and then sell them. It was agreed that Imperial would be liable for any deficiency owing after its account was credited with the proceeds of the sale. The agreement was signed by the parties at a meeting in Missoula, Montana, on October 18, 1974. All parties were represented by counsel.

Pursuant to the agreement, Dolson sold the dairy cows to the highest financial advantage of Imperial. Dolson then tendered an accounting and requested from Imperial payment of the deficiency. All parties cooperated in the liquidation of the dairy herd.

In March 1975 Dolson's general manager met with

-2-

defendant Lillithun in Ronan, Montana. At that meeting Lillithun did not dispute the existence of the deficiency but did take issue with the amount owing. Lillithun further indicated that defendant Edmiston was solely liable for the deficiency.

After the Ronan meeting Dolson prepared and forwarded the notice of deficiency. Another meeting was arranged in which all parties would be present. With the exception of defendant Lillithun, all parties were present with counsel at a May 23, 1975, meeting in Spokane, Washington. At this meeting Dolson was advised that Imperial, and all principals of Imperial, were insolvent. Dolson was informed that defendant Lillithun was near bankruptcy and that defendant Edmiston was defending an action on certain loans from the Production Credit Association involving hundreds of thousands of dollars. Settlement discussions at the Spokane meeting began at $100,000, substantially less than the $142,000 deficiency computed by Dolson. Defendants were clearly in no position to negotiate at the $100,000 figure, and the number was reduced to $65,000 and then to $55,000.

At the Spokane meeting defendant Edmiston first mentioned that he owned a parcel of real property in Kalispell, Montana, which might be used to partially satisfy the deficiency. Dolson's attorneys testified that the property was referred to by defendant Edmiston as a "commercial, downtown piece of property." Edmiston also represented to Dolson that the property was worth $45,000 and that the property had recently been appraised at that figure by James Christian, father of attorney Cal Christian, who represented defendant Lillithun. Counsel for Edmiston

informed Dolson that he was acquainted with the elder Christian, knew of his experience in the real estate field, knew that he was a competent appraiser and that, if anything, the appraisal would be conservative.

At the conclusion of the Spokane meeting, Dolson advised defendants that it would agree to a settlement of $55,000 cash and advised defendant Edmiston that he should use the Kalispell property as collateral in securing the necessary financing.

On July 23, 1975, a meeting took place in Kalispell, Montana. Present at this meeting were Robert Dolson and his attorney, James Gillespie; defendant Edmiston and his attorney, Milton Datsopoulos; and attorney Cal Christian, representing Imperial Cattle Company and defendant Lillithun, who was again absent. Once more the Kalispell property was discussed as possible satisfaction of the deficiency debt. It was again represented as having a value of $45,000, as confirmed by the recent appraisal. Robert Dolson expressed his desire that any settlement consist of cash.

The parties discussed a total monetary settlement of $55,000, a figure which was reduced to $52,500 with $7,500 initially with quarterly payments to be made thereafter of $2,500 until the debt was extinguished. The outstanding balance was to be secured with the Kalispell property. Finally, Dolson was to receive a copy of the property description, title insurance (or other proof of clear title) and a copy of the Christian appraisal confirming that the tract was worth $45,000. This was Dolson's only presence in Kalispell until the settlement was signed. He and his

-4-

attorney flew into Kalispell on the morning of July 23 and left that afternoon. The Kalispell property was not identified to them, nor did Dolson request to see it.

After the Kalispell meeting, negotiations were continued by telephone and correspondence. On October 13, 1975, Dolson agreed to accept the Kalispell property. From defendants Lillithun and Imperial, Dolson was to receive $7,500 in cash. On October 31 Robert Dolson went to Missoula and to Kalispell to execute the settlement. He accepted from Imperial a $7,500 promissory note, payable at 8 percent per annum, and guaranteed by defendant Lillithun. Defendant Edmiston tendered a warranty deed for the Kalispell property.

Dolson traveled from Missoula to Kalispell and obtained the signature of defendant Edmiston. While in Kalispell, Dolson contacted a local realtor, John Ming, for the purpose of listing his newly acquired property. He met Ming at the property site. Dolson's brief describes the Edmiston property, which was represented as being conservatively valued at $45,000, as follows:

> ". . . consist[ing] of slightly over one acre of undeveloped ground situated directly between a Pacific Power & Light substation and the railroad tracks in Kalispell, Montana. While there was a narrow corridor leading from Center Street along and behind the substation to the property, the property itself had no frontage upon any Kalispell street. At its closest point to 'downtown Kalispell', the property was five blocks distant."

Ming informed Dolson that he had no interest in accepting a listing on the property and that he could not imagine who would be interested in the property with the possible exception of Pacific Power & Light, the adjacent

-5-

landowner. Ming testified that when he examined the property in October 1975, the value of the tract was about $7,500.

Upon returning to Yakima, Washington, Dolson engaged MIA appraiser, Wayne Neil. Neil appraised the parcel at between $1,250 to $8,900, dependent upon the resolution of uncertainties regarding access. Neil agreed with realtor John Ming that access was so limited, approximately sixteen feet of passageway, that a commerical use of the property was virtually precluded. Neil's conclusion was that the land would have a use classification of "low-level industrial." That classification is one of the most untenable and unmarketable classifications existing with respect to commercial property.

At trial it was revealed that Robert Dolson had not seen the property prior to the execution of the settlement agreement. It was also established that although Dolson had an extensive business background, he was not experienced in real estate. Defendants introduced a State Department of Revenue appraisal which established that for property tax purposes, the tract was worth $33,450, only about $11,500 less than Edmiston's representations. Neither defendant Lillithun nor attorneys Christian or Datsopoulos had ever seen the property, and all denied having any knowledge of its value beyond the representations of defendant Edmiston and the Christian appraisal.

The following issues are raised on appeal:

1. Whether Dolson is entitled to rescission because of defendants' misrepresentations as to the nature and value of the property?

2. Whether there was substantial credible evidence to support the District Court judgment; whether the District Court properly disposed of the issues; and whether the District Court's conclusions of law were supported by its findings of fact?

Appellant maintains that the settlement agreement should be rescinded because of respondents' misrepresentations as to the value and nature of the Kalispell property. We do not agree.

This Court has long adhered to the rule that statements of opinion are preeminently subject to the common-law doctrine of caveat emptor. See Ray v. Divers (1925), 72 Mont. 513, 234 P. 246. Statements as to the value of property are generally considered declarations of opinion and will not constitute a proper basis for rescission. 37 Am.Jur.2d Fraud and Deceit, § 119 at 164. Courts are continually confronted with the dilemma of determining to what lengths a vendor of property may go in "talking up" his merchandise--where does "traders talk" end and actionable fraud begin? Clearly, the line between opinion and fact is an especially fine line for the District Courts to draw when representations are made regarding the value of property.

The common law provides reasonable protection to purchasers against fraud and deceit. However, it does not go to the romantic length of offering indemnity against the adverse consequences of folly and indolence or a careless indifference to information which would enlighten the purchaser as to the truth or falsity of the seller's assertions as to value. In such an instance, every person

-7-

reposes at his own peril in the face of another's opinion when he has ample opportunity to exercise informed judgment. "Simplex commendatio non obligat." 2 Kents Comm. 485.

We emphasize, however, that it is singularly within the province of the District Court to determine whether fraud has been perpetrated on an innocent purchaser. The District Court is in the best position to weigh the factors involved, assess the credibility of witnesses, and conclude whether the statements regarding value constitute fact or opinion.

In ruling that the District Court's decision must be given great credence in this case, we reaffirm our decision in Lumby v. Doetch (1979), ____ Mont. ____, 600 P.2d 200, 36 St.Rep. 1684, wherein we found that this Court must view the evidence in a light most favorable to the prevailing party and presume the correctness of the District Court's judgment. Findings of fact shall not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P. Although conflicts may exist, such that the evidence tends to show that representations as to value constitute both opinion and fact, it is the duty and function of the trial court to make a resolution of the case one way or the other. That court's reasoned and thoughtful determination that the vendor's statements as to the value of the property were opinion, not declarations of fact, will not be disturbed where its decision was based on substantial evidence. See Kostbade v. Buckingham (1979), ____ Mont. ____, 595 P.2d 1149, 36 St.Rep. 129. It is not a proper function of this Court to exchange our opinion for that of the District Court, even if we might have reached a different conclusion. In accord,

Porter v. Porter (1970), 155 Mont. 451, 473 P.2d 538.

Our review must now examine the evidence to determine whether the District Court exceeded its discretion in the resolution of this case. Reviewing the evidence in a light most favorable to the prevailing parties, we conclude that there is substantial credible evidence supporting the court's judgment, that the court properly disposed of the issues, and that the court's conclusions of law were supported by its findings of fact.

Robert Dolson is not financially naive. To the contrary, he is an able and successful businessman. His relationship to defendants can only be considered adversarial to the extent their respective positions represent competing interests. These two factors, Dolson's business acumen and his relationship to defendants, weigh heavily against the proposition that defendants' took unfair advantage of Dolson when declaring the value of the property. If indeed Dolson relied upon the representations of defendants as to the value of the parcel, we see no reason why the District Court would have been obliged to condone such imprudence by allowing rescission of the agreement. Helena Adjustment Co. v. Claffin (1926), 75 Mont. 317, 243 P. 1063; see also, Williams v. Joslin (1965), 65 Wash.2d 696, 399 P.2d 308 (reliance must be reasonable; purchaser may not rely on representations when their truth can be readily determined).

Even at this point in the case, there can be no ready and accurate determination of the value of the property amid the conflicting opinions found in the record. Realtor Ming alleges the property is worth $7,500. Appraiser Neil

believes the parcel is worth as much as $8,900. The State of Montana Department of Revenue determined the value of the property to be $33,450 with a taxable value of $22,000. Finally, we have the opinion of James Christian that the property is worth $45,000.

Surely the facts of this case exemplify the reasoning behind the rule that statements as to the value of property are not grounds for rescission. It is reasonable to expect that in a situation such as this vendors would attach the highest possible value to the property. Indeed, it would be unreasonable to assume otherwise, and purchasers who rely on such representations proceed at their own risk.

On October 31, 1975, Robert Dolson was in Kalispell to obtain the signatures of the Edmistons and conclude the provisions of the settlement agreement. Only after complete execution of the agreement did Dolson examine what he had accepted. The record discloses no reason why Dolson did not view the property before he formalized the agreement. Since he chose to accept the property sight unseen, when he had ample opportunity to examine the subject of his bargain, Dolson cannot now be heard to complain that he was unfairly misled.

We concur with the District Court finding that Dolson's folly was his own. The District Court's finding that rescission would be improper in this case is supported by substantial evidence, and the court's findings of fact are amply supportive of its legal conclusions.

Accordingly, we affirm.

_____
Justice

-10-

We concur:

_Frank I. Haswell_
Chief Justice

_Gen B Daly_

_Daniel J Shea_

_John C. Sheehy_
Justices