No. 85-85

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

JOHN L. WRIGHT,

        Plaintiff and Appellant,

  -vs-

LARRY P. BLEVINS,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Seventh Judicial District
              In and for the County of McCone,
              The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert Hurly, Glasgow, Montana
        Habedank, Cumming, Best & Maltese, Sidney, Montana

    For Respondent:

        Arnie A. Hove, Circle, Montana

_____

Submitted on Briefs: July 11, 1985

Decided: August 29, 1985

Filed: AUG 29 1985

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by John L. Wright from a judgment against him entered in the District Court, Seventh Judicial District, McCone County.

Wright brought an action in the District Court to set aside a deed to real property situated in McCone County which Wright had delivered to Blevins, principally on the grounds of fraud and lack of consideration. The District Court held in favor of Blevins. We affirm the District Court.

On July 13, 1982, John L. Wright, a single man, made, executed and delivered to Larry P. Blevins, for a consideration of $1.00, approximately 4500 acres of ranch land in McCone County. In the deed, Wright reserved unto himself all income from the minerals owned by him during his natural life.

On January 13, 1983, Wright filed an action in the District Court alleging that the deed was procured by fraud on the part of Blevins, that the deed lacked consideration, and that the deed was not based on any agreement between the parties. The District Court held against the plaintiff Wright on his allegations, and entered judgment sustaining the deed by determining that Wright has no right, title or interest in the property described in the deed except for the life interest in income from the minerals. From that judgment, Wright appeals.

The facts as found by the District Court are favorable to Blevins. Those findings show that at the time the deed was delivered, John L. Wright and Larry P. Blevins were the owners of the deeded property as tenants in common. The

ranch was originally known as the Blevins ranch, having been developed by Lee Blevins, an uncle of Larry. John L. Wright's deceased wife, Edith Wright, and Bill Blevins were sister and brother of Lee Blevins. In 1955, prior to his death, Lee Blevins deeded to John L. Wright and Bill Blevins (Larry's father) 2600 acres of land as tenants in common in which Lee Blevins had owned a 100 percent interest. In addition, he conveyed a 50 percent interest in another 1800 acres of land to John Wright and Bill Blevins, as tenants in common. In 1964, John Wright and Bill Blevins bought the other one-half interest in the other 1800 acres from Prince Anderson. John Wright received another 640 acres by distribution of the estate of his wife, Edith Wright Blevins.

When Lee Blevins made the gifts of the land to John Wright and Bill Blevins in 1955, he told them to deed the land over to Larry Blevins "when they were done with it." In 1979, before his death, Bill Blevins, the father of Larry, by deeds prepared in the law offices of Gene Theroux, deeded over to his son, Larry, his interest in the Lee Blevins land. At that time, John Wright was also asked to deed over the Lee Blevins land and the Edith Blevins land to Larry, but John declined, stating that he still had some use for it.

For some years prior to December 1982, Larry Blevins was a member of the U.S. Army but would spend time on leave at the ranch and at his father's home in Wolf Point, Montana, prior to leaving the Army. In July 1982, plaintiff John Wright came to see the defendant, Blevins. Wright informed Blevins that he would take care of deeding the land to him. John Wright stayed with Larry Blevins that night. That same afternoon, Larry Blevins called the lawyer, Gene Theroux in

Wolf Point, Montana, and asked him to prepare the deeds, transferring the land from John Wright to Larry Blevins.

At that time, there was added, at the request of Wright, the reservation of the minerals income to John Wright for his lifetime and that reservation was typed in prior to the execution of the deed. John Wright signed the deed, and in the office of Theroux received from Blevins the sum of $1.00 although Wright stated that such consideration was not necessary. The actual signing of the deed took place on July 13, 1982. The deed was subsequently recorded.

In the first part of August 1982, Wright did sell the lands that he did not wish to convey to Larry Blevins. The sale was made to other parties.

The court further found that in October 1982, Wright informed Eleanor Schmeltzer, a long-time friend that he had known for over 60 years, that he had deeded his interest in the Blevins land to Larry because he was through with the land.

The court also found that although Wright alleged that he thought he was signing a lease in the land instead of a deed, and that they had previously discussed a lease, Wright was nevertheless unable to testify as to what the terms of the lease were to be with the exception that at one time he stated that the lease was to be for two years. At another time in the trial he did not know the terms of the lease and said that the rent would be a share of the cattle in accordance with the months of use, but nothing more specific than that.

The court also found that Wright consistently stated that when he was through with the land it was his intention that he would deed his share of the land to Larry Blevins.

- 4 -

The issues raised by Wright on appeal are: 1) that the District Court erred in failing to void the transfer of real property to Blevins; and 2) that the findings of fact and conclusions of law are not supported by the evidence.

The disputes of fact that relate to the claim of fraud, and to the claim of insufficiency of the evidence to support the District Court judgment are intertwined. Therefore, we will discuss the facts claimed by Wright to support his allegations for the purpose of both issues.

Wright testified that he was called by Blevins who said he needed Wright in Wolf Point to sign a lease agreement. Wright testified that he was living on Social Security and interest proceeds from savings that were being depleted, and that he could not handle the property without hired help because of the expense. Wright contended that he was not through with the property, that he still had use for it.

Wright further contends that even under Blevins' testimony, Wright was intoxicated when he met with Blevins, and that they had visited two bars in the morning before going to the attorney's office for the signing. Moreover, Wright testified that he was hard of hearing, and unable to understand what was going on because of that disability. He therefore claims that without benefit of his attorney being present, being aged, intoxicated, and extremely hard of hearing, he signed a warranty deed conveying not only his interest in the property but that also of Larry Blevins to Blevins when he thought he was executing a lease. He was under the impression that he was leasing the property for a period of 2 years. Wright stated that he did not review or read the instrument before he signed it, relying on Blevins' representation that he was signing a lease agreement.

Afterwards, he assigned grazing rights to federal lands under leases that were a part of the ranch to Neula Gribble, and told her husband, John Gribble that he had leased the other property to Blevins.

Offsetting the testimony of Wright is that of Blevins and the Attorney Gene Theroux. By their testimony, the deed was inspected by Wright who wanted to make sure that the land owned by him individually was not included in the deed to Larry Blevins, which land he stated he never promised to Larry Blevins. He intended to sell the separate land of approximately 3000 acres. Wright did not appear to be drinking or confused, nor did there appear to be any pressure on him. The description of the deed was read by Wright and by the attorney. At that time, at the request of Wright, a reservation of the mineral income to Wright for his lifetime was typed in the deed prior to its execution. John Wright signed the deed in the presence of the attorney and Blevins. The deed recited the payment of $1.00 as consideration, and Wright received from Blevins the sum of $1.00 in Theroux's office although the plaintiff stated that such consideration was not necessary. The actual signing of the deed took place on July 13, 1982.

On August 4, 1982, Wright did sell the separate lands to third parties.

It was Wright's contention throughout the trial that when he no longer had use for the land, he would deed the land to Blevins.

It is clear that the law in this state, stated by us many times, in cases tried to the court without a jury, the credibility of witnesses is for the District Court to decide, and in the absence of an abuse of discretion, the District

Court's findings of fact which resolve contested issues of fact will not be set aside by us unless clearly erroneous. Rule 52(a), M.R.Civ.P.

The findings of fact made by the District Court are clearly supported in the evidence, and far from being clearly erroneous, appear proper in the light of the circumstances under which Wright acquired the lands.

Moreover, the District Court's findings negate any possibility of holding for Wright on the grounds of fraud. In order to establish fraud, the same elements must be established in a trial before a judge as in a jury trial. Young v. Handrow (1968), 151 Mont. 310, 316, 443 P.2d 9, 12. Actual fraud based on misrepresentation requires proof of the representation, its falsity, its materiality, the speaker's knowledge of its falsity, or his ignorance of its truth, the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated, the hearer's ignorance of its falsity, the hearer's reliance upon its truth, the hearer's right to rely thereon, the hearer's consequent injury. Wortman v. Griff (Mont. 1982), 651 P.2d 998, 1000, 39 St.Rep. 1916, 1918; Cowan v. Westland Realty Company (1973), 162 Mont. 379, 383, 512 P.2d 714, 716; Clough v. Jackson (1971), 156 Mont. 272, 279, 280, 479 P.2d 266, 270; Hutton v. Ming (1970), 155 Mont. 149, 153, 467 P.2d 688, 690. Fraud can never be presumed but must be proved. Section 28-2-404, MCA; Poulsen v. Treasure State Industries, Inc. (Mont. 1981), 626 P.2d 822, 825, 38 St.Rep. 218, 221. Proof of fraud must be by a preponderance of the evidence, Cowan v. Westland Realty Company, supra.

The District Court did not find that Larry Blevins had been guilty of any deceit or false representation as to the

- 7 -

contents of the deed so as to put Wright off guard. In such case the rule of law announced by this Court in Hjermstad v. Barkuloo (1954), 128 Mont. 88, 270 P.2d 1112, applies. A party will not be relieved, either by a court of law or a court of equity, where he executes an instrument without reading it, when he has it in his hands and negligently fails to ascertain the contents of it and the other party is not guilty of any deceit or false representation as to its contents. Hjermstad, supra.

Wright also contends, however, that the warranty deed in this case should be voided because the real property in this case had an approximate value of $300,000 to $600,000 and the consideration recited in the deed and proved to have been given was the sum of $1.00. Wright contends that under section 26-1-602(38), MCA, the recitation in a deed or contract that there was "good and sufficient consideration" is a disputable presumption. Wright relies on Baker National Bank v. Lestar (1969), 153 Mont. 45, 453 P.2d 774, and White v. Nollmeyer (1968), 151 Mont. 387, 443 P.2d 873, to the effect that fair consideration is necessary. In White v. Nollmeyer, supra, we said that the test to be applied was whether the disparity between the true value of the property transfer and the price paid is so great as to shock the conscience with the conviction that the transfer could never have been made in good faith. The District Court, however, found that in making the deed in this case, Wright had the intention of making a donative transfer in addition to receiving the $1.00 consideration. Wright objects to this finding of the court, stating that a finding that there is sufficient consideration for a deed is not compatible with

- 8 -

finding an intention to make a gift, which would require no consideration.

We cannot ignore, however, that Wright received the land originally as a tenant in common with Bill Blevins, the father of Larry Blevins, and under the stipulation or condition that they deed the lands to Larry "when they were done with it." The performance of this condition by Wright was characterized by the District Court as an act of donative intent, but regardless, whether looked at as a gift, or as a performance of a condition, this coupled with the payment of $1.00 constituted fair and adequate consideration in this case.

There was a side issue to which we attach no relevance, in that after the transfer by deed, Larry Blevins and his wife petitioned to be appointed guardians of Wright by reason of his chronic alcoholism. The guardianship was eventually dissolved by the District Court on the ground that Wright was capable of managing his own affairs. The point which Wright attempts to make is that at the time of the transfer of the deed Blevins contends that Wright was not intoxicated, but some months later he attempted to be appointed Wright's guardian on the grounds of Wright's chronic alcoholism. The circumstances of the guardianship do not prove or disprove any fact at issue in connection with the issues of the warranty deed, and we attach no importance to it.

The judgment of the District Court is affirmed.

John C. Shelby
_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices