No. 87-32

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

WES SPRUNK,

Plaintiff and Appellant,

-vs-

FIRST BANK WESTERN MONTANA MISSOULA
and FIRST BANK SYSTEM, a registered
bank holding company,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
THe Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Rossbach & Whiston; William A. Rossbach, Missoula,
Montana

For Respondent:

Garlington, Lohn & Robinson; George Goodrich,
Missoula, Montana
Murphy, Robinson, Heckathorn & Phillips; James A.
Robischon, Kalispell, Montana

Submitted on Briefs: June 18, 1987

Decided: August 19, 1987

Filed: AUG 19 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Wes Sprunk appeals an order of summary judgment entered against him and in favor of First Bank Western Montana Missoula by the District Court, Fourth Judicial District, Missoula County. We affirm the order of the District Court.

Wes Sprunk owned an automobile dealership in Missoula, Montana from 1973 to 1982. He was backed in this business by First Bank Western Montana Missoula, which had a floor plan financing arrangement with him in addition to its financing of Sprunk's customer retail installment contracts and Sprunk's own personal and business loans. This arrangement appeared to be mutually satisfactory until 1979 and 1980, when the automobile industry was hit with increased gas prices, a change in the market to smaller cars, and increased interest rates. The concomitant drop in profits for banks involved in floor planning and financing retail purchases caused the First Bank System, parent company for First Banks throughout this region, to reassess its "total credit exposure to automobile dealers."

Despite the general economic recession and the down-turn in the automobile industry, Sprunk believed he would weather the bad times, and the Bank appeared to support him in this belief. In October, 1980, Sprunk refinanced his existing debt with the Bank by obtaining a $500,000.00 guaranteed loan from the Small Business Administration (SBA). The SBA guaranteed 90% or $450,000.00 of the $500,000.00 loan. However, once this guaranty was obtained from SBA, Bank officers began pressuring Sprunk to liquidate his dealership. Sprunk hired a Seattle attorney who specialized in work-outs and began negotiating with the Bank. Sprunk's goal was to

restructure his business by selling his prime real estate on the Highway 93 "strip" in Missoula, and relocating to a smaller business location downtown.

After a year of negotiations, Sprunk and the Bank worked out a tentative agreement in April, 1982. In this draft agreement, Sprunk acknowledged his debts in excess of one million dollars to the Bank and agreed to sign over deeds to his Missoula and Lake County real estate as well as some personal property located in Lake County, in exchange for the Bank's discharge of his business indebtedness. The draft agreement also provided for the Bank's continued floor plan financing for Sprunk, contingent upon Sprunk's timely payments on his debts. On April 28, 1982, Sprunk executed deeds in lieu of foreclosure conveying his Highway 93 auto dealership property to the Bank.

The next sequence of events is disputed by the parties. Sprunk claims the Bank, having induced Sprunk to deed over his prime real estate and to reaffirm his personal guaranty on the SBA loan, now began pressuring him to voluntarily liquidate or be forced into foreclosure. The Bank claims that negotiations between the parties "broke down" for reasons not relevant to this appeal. In either event, the end product was an agreement entered into by Sprunk and the Bank on May 27, 1982. The agreement stated that the Bank and SBA agreed to accept deeds in lieu of foreclosure on Sprunk's Missoula and Lake County real property in exchange for the discharge of Sprunk's indebtedness to the Bank. The agreement stated in relevant part:

> (3) Sprunk understands that the real properties conveyed to Bank will be owned and held by Bank for its account and the account of a Guarantor, United States Small Business Administration, "SBA", and that he has no further interest therein and has absolutely and forever foregone any and all right or claim in and to said property, including any

- 3 -

right or equity of redemption, and that all rights of Sprunk in and to said property are cut off and released by the execution of deeds to Bank and that no further interest in or right to said property remains in Sprunk.

Sprunk further understands that a potential liability remains, as to SBA, under an October 9, 1980 Promissory Note in favor of Bank, and his Guaranty, in favor of SBA, as reaffirmed, and that if a deficiency results from the sale of the real property in which SBA has an interest, a potential claim against Sprunk, as such Guarantor could be asserted by SBA. This Agreement is not meant to resolve any such potential claim by SBA, or any defenses or claims of Sprunk relating thereto.

. . .

(10) Sprunk desires to be released from personal guarantys given to Bank by Wesley G. Sprunk guaranteeing the obligations of Sprunk corporations to Bank. In order to induce Bank to release such guarantys, Sprunk warrants and represents that his financial condition is such that such guarantees are essentially uncollectible and that neither he nor his corporations have any assets (except as needed for ongoing living needs and expenses), including bank accounts, or stock or bond investments which would support such guarantys. In reliance upon such representations, Bank agrees that as soon as matters relating to factory "buy-backs" and collection of receivables assigned to Bank have been resolved, but not later than September 1, 1982, if Sprunk is then in compliance with the terms of this Agreement, all liabilities of Sprunk to Bank shall be considered fully discharged and satisfied (with the sole exceptions of the potential liability in favor of SBA, as to ninety percent (90%) of the October 9, 1980 promissory note above described and those obligations specified in Paragraph (11), below). The obligations of Sprunk and Bank to comply with the terms of this Agreement shall survive such discharge. Except for the performance of things undertaken by each party hereto under the terms of this Agreement, and subject to the September 1, 1982 date above described as to release of Sprunk guaranties, each party releases the other from any

- 4 -

claims which either might have against the other. This release does not affect the claims of SBA against Sprunk nor defenses or claims of Sprunk against SBA.

Sprunk now claims this release agreement is void because he was induced to enter into it by the Bank's fraudulent misrepresentations. He argues the Bank pressured him into signing the agreement by overstating the debt he owed it and overstating the losses it was suffering as a result of the liquidation. On March 1, 1984, Sprunk filed a complaint against the Bank alleging a bad faith breach of fiduciary duty, and actual and constructive fraud.

On December 21, 1984, the Bank filed its first motion for summary judgment, contending the May 27, 1982 agreement released the Bank from all claims brought by Sprunk. The District Court denied this motion on the grounds that "a genuine issue of material fact might exist as to the validity of the Agreement and the possibility of fraud in its procurement." After further discovery, the Bank filed a second motion for summary judgment April 30, 1986. This motion was granted by the District Court and judgment was entered in favor of the Bank September 23, 1986. Sprunk moved to vacate the judgment October 6, 1986, such motion being denied by the District Court. Sprunk now appeals on the following issues:

1. Whether summary judgment was properly granted in an action for fraud?

2. Whether the District Court erred by placing the burden of proof on Sprunk, as the party opposing the motion for summary judgment, of putting forward and proving a material fact issue of actual and constructive fraud?

3. Whether the District Court erred by refusing to consider the post-judgment affidavit of Sprunk's Seattle

attorney and by deeming Sprunk to have constructive knowledge of what the Seattle attorney may have known but not communicated to Sprunk?

The first two issues raised by Sprunk question whether the District Court erred in granting summary judgment and in placing the burden of proof on the parties. Sprunk argues the District Court erred by deciding questions of fact, and by requiring Sprunk to prove his allegations of fraud rather than merely assert them.

The party seeking summary judgment is entitled to judgment when the record discloses no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Mayer Bros. v. Daniel Richard Jewelers, Inc. (Mont. 1986), 726 P.2d 815, 816, 43 St.Rep. 1821, 1823. The initial burden rests with the moving party to establish that the evidence raises no genuine issue of material fact. Id. If this burden is met, the burden then shifts to the party opposing the motion to show by presenting facts of a substantial nature that a material factual issue does exist. Id. The opposing party must set forth specific facts showing there is a genuine factual issue for trial. Rule 56(e), M.R.Civ.P.

In this instance, Sprunk filed a complaint against the Bank for actual and/or constructive fraud. The Bank first moved for summary judgment on the grounds that Sprunk had voluntarily entered into an agreement releasing all his claims against the Bank. Sprunk responded that the Bank had fraudently induced him to sign the release by making material misrepresentations as to the size of Sprunk's debt to the Bank. Sprunk maintained the Bank told him he owed it in excess of $1,500,000.00 when in actuality, that sum was reduced by $450,000.00 which the SBA had paid the Bank as guarantor on Sprunk's SBA loan. In its first opinion and

- 6 -

order denying the Bank's motion for summary judgment, the District Court noted that "[t]he majority of facts of the present case are undisputed." However the court found "that a genuine issue of material fact might exist as to the validity of the Agreement and the possibility of fraud in its procurement."

Discovery continued on the issue of the validity of the release agreement, and on April 30, 1986, the Bank filed its second motion for summary judgment. The Bank attached to its brief in support of the motion a copy of a letter dated March 3, 1982 from counsel for the SBA to President Leland of First Bank Western Montana Missoula. The letter was carbon copied to counsel for the Bank and Sprunk's Seattle attorney. In the letter, the SBA attorney advised President Leland that a conference call involving himself, Wes Sprunk, and Sprunk's attorney was held concerning Sprunk's reaffirmation of the SBA loan. The letter stated in pertinent part, "SBA has honored its guaranty of the $500,000 loan and this in the amount of 90%. At least that amount of the guaranty remains intact." While the Bank conceded Wes Sprunk personally may not have been aware of the SBA payment, it argued that Sprunk's counsel who received the March 3, 1982 letter did know of the payment. The Bank also stated it had never denied being paid by the SBA, or had ever made any positive assertion that it had not been paid. The Bank also noted, in its reply brief, that the April, 1982, draft agreement acknowledged Sprunk's indebtedness to the Bank and SBA. Sprunk continued to assert he knew nothing of the SBA's payment to the Bank, and that he had signed the release agreement based on a misrepresentation of how much money he owed and to whom he owed it.

The essence of Sprunk's argument is that he signed a release in favor of the Bank in total ignorance of his

liabilities to the Bank. He defends his ignorance on the grounds the Bank misrepresented his debt to it. We find the record does not support his allegations of fraud or misrepresentation.

A release may be set aside if it was obtained fraudulently or without adequate consideration. Krusemark v. Hansen (Mont. 1981), 627 P.2d 1202, 1205, 38 St.Rep. 594, 598. Fraud can never be presumed but must be proved by a preponderance of the evidence; mere suspicion of fraud is not sufficient. Poulsen v. Treasure State Industries, Inc. (Mont. 1981), 626 P.2d 822, 825, 38 St.Rep. 218, 221. In order to bring the question of fraud before a trier of fact, the party alleging fraud must make out a prima facie case on the following elements:

    1. a representation;

    2. its falsity;

    3. its materiality;

    4. the speaker's knowledge of its falsity or ignorance of its truth;

    5. the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated;

    6. the hearer's ignorance of its falsity;

    7. the hearer's reliance upon its truth;

    8. the right of the hearer to rely upon it;

    9. the hearer's consequent and proximate injury or damage.

Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1982), 197 Mont. 1, 11, 640 P.2d 453, 458.

Even drawing all reasonable inferences in favor of Sprunk, as the party opposing summary judgment, we do not find he has made out an issue of material fact for fraud. Although he has alleged the Bank misrepresented the total Sprunk debt, he has not set forth any specific false

- 8 -

representations made by the Bank. In fact, the financial statements estimating Sprunk's liabilities, the draft release agreement and the final May 27 release all cite the SBA loan as a separate debt. Sprunk was involved in the conference call in which reaffirmation of the SBA loan was discussed, and Sprunk in fact reaffirmed it. The language in the May 27 release stated that Sprunk was conveying his property to the "Bank and SBA", that the property would be "held by [the] Bank for its account and the account of a Guarantor, United States Small Business Administration," and that:

> a potential liability remains, as to SBA, under an October 9, 1980 Promissory Note in favor of the Bank, and his Guaranty, in favor of SBA, as reaffirmed, and that if a deficiency results from the sale of the real property in which SBA has an interest, a potential claim against Sprunk, as such Guarantor could be asserted by SBA. This Agreement is not meant to resolve any such potential claim by SBA, or any defenses or claims of Sprunk relating thereto.

Assuming the Bank was pressuring Sprunk with ultimata to voluntarily liquidate or be foreclosed, we question whether Sprunk relied or had a right to rely on the Bank's "ultimatums." Sprunk was well aware of the huge debt load he was carrying in trying to keep his business afloat. With the assistance of experienced counsel, he had negotiated with the Bank for over a year in an effort to restructure his business. The option of liquidation appears in the record months before the May 27 release was signed. The general rule is that a defrauded party has a right to rely on another's representations when the parties are not on equal footing. Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 197 Mont. at 12, 640 P.2d at 459. While it is arguable debtors and creditors are never on equal footing, the

evidence in this case does not disclose two parties with unequal bargaining power.

The third issue raised by Sprunk is whether the District Court erred by refusing to consider the post-judgment affidavit of Sprunk's Seattle attorney that Sprunk should not be charged with constructive knowledge of what his attorney knew regarding the March 3, 1982 letter from the SBA to the Bank. Our review of the District Court's opinion and order on Sprunk's motion to vacate judgment shows that the court did consider the attorney's affidavit. The Seattle attorney, by affidavit, did not dispute he had received the March 3 letter; he did state neither he nor Sprunk understood the SBA had actually paid the Bank at that point. This affidavit does not add extra weight to Sprunk's allegations that the Bank misrepresented his debt load. Whether the SBA paid in February, March or later does not change the language of the release in which Sprunk acknowledged his debts to the Bank and the SBA. We find no merit in this issue.

The judgment of the District Court is affirmed.

_____
                Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 10 -