No. 88-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

EARL BATTEN, individually and d/b/a
RIMROCK HONDA-HARLEY DAVIDSON,

Plaintiff and Appellant,

-vs-

WATTS CYCLE AND MARINE, INC., AND OAKLAND
& COMPANY,

Defendants and Respondents.

'89 NOV 30 PM 2 07
ED SMITH, CLERK
MONTANA SUPREME COURT
FILED

APPEAL FROM:   District Court of the Thirteenth Judicial Ditrict,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Timothy J. Whalen; Whalen & Whalen, Billings, Montana

        For Respondent:

               T. Thomas Singer; Moulton, Bellingham, Longo & Mather,
               Billings, Montana
               James A. Poore, III; Poore, Roth & Robinson, Butte,
               Montana

Submitted on Briefs:   Sept. 15, 1989

Decided:   November 30, 1989

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff (Batten) purchased a motorcycle dealership from defendants. When the business failed, he sued Watts, the seller, and his real estate agent, Oakland, under theories of fraud, constructive fraud, and negligent misrepresentation, seeking compensatory and punitive damages. The District Court for the Thirteenth Judicial District, Yellowstone County, granted summary judgment in favor of defendants. From this judgment, Batten appeals. We affirm.

The issues presented on appeal are:

1. Did the District Court err in granting summary judgment in favor of defendants?

2. Did the District Court err in its award of costs and attorney fees to the defendants?

Defendant Watts purchased Billings Honda-Harley Davidson (BHHD) from Arnie Brey in 1976, and operated the business profitably for a number of years. Batten became interested in purchasing a motorcycle business due to his personal interest in motorcycle riding. He had an educational background which included a Bachelor of Arts Degree, a Bachelor of Science in Geology, several graduate courses in business, and he had studied for the Colorado real estate exam. He had read a significant amount about the motorcycle industry, and the various makes of motorcycles and their sales records. He looked at various dealerships, and in 1981, responding to an advertisement in Cycle News Magazine, became interested in purchasing BHHD.

After seeing another ad in the Denver Post, Batten called Watts' agent, Gary Oakland, to inquire about the dealership, and was sent a copy of the brochure which included the financial statements for the fiscal year ended November 29, 1981. Because the representations in the brochure

2

are central to this case, we will set forth the brochure in pertinent part:

PRICE:                    $360,000.00

DOWN PAYMENT:             $160,000.00

EARNEST MONEY
REQUIRED:                 $ 15,000.00

DESCRIPTION:              Billings Honda-Harley Davidson is the largest dealer for Honda and Harley-Davidson motorcycles in the state of Montana. The price includes the parts inventory, used cycles, shop tools, dealership agreement, leasehold improvements, trade name, etc. The new merchandise inventory is priced above $360,000.00 and is financed on a floor-plan arrangement.

                         In 1981, the company sold over 450 Honda's and 72 Harley-Davidson motorcycles.

BUILDING:                The real estate is leased at the rate of $2,700.00 per month. It consists of approximately 14,400 square feet. The facility is in good condition, is attractive, and has ample parking. The rent is presently $2.25 per square foot including utilities and other expenses.

EMPLOYEES:               The business is completely staffed with a sales manager, parts manager, service manager, 5 mechanics, and bookkeeper-secretary. It is understood that these people wish to remain with the firm.

                         The seller will agree to a covenant of non-competition.

OWNER:                   Ronald J. Watts

BROKER:                  Gary Oakland

3

Upon his request, Batten was later provided with financial statements for other years. He and his family then visited the dealership to inspect the business and the Billings business community. Both the local and out-of-state advertisements put out by Oakland, represented BHHD as the leading dealership in Montana; as making profits on both Honda and Harley-Davidson; that the business had strong assets; was well run and had a nice facility with a complete sales service and office staff. Batten maintains that these representations convinced him to purchase the business. After a series of negotiations with Gary Oakland, Batten signed a purchase agreement and deposit receipt in August, 1982. The deal was closed in October of that year.

During the first year of ownership, gross sales were $1.6 million which were higher than any of the previous six years under Watts' management. Batten had profits of approximately $20,000 to $24,000. In November, 1983, Batten changed the location of the business, changed the name and the product mix, and fired many of the employees. After 1983, sales dropped and the business did not show a profit. In June, 1985, Batten filed a complaint against Watts and Oakland seeking compensatory and punitive damages. However, he continued to operate the business until May 4, 1988, when he filed a Chapter 7 Petition in Bankruptcy.

I

Did the District Court err in granting summary in favor of defendants?

Batten urges that the representations made by defendants concerning the business amounted to fraud, constructive fraud, or negligent misrepresentation. Summary judgment is only proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Any inferences to be drawn from

4

the factual record must be resolved in favor of the party opposing summary judgment. Simmons v. Jenkins (1988), 750 P.2d 1067, 45 St.Rep. 328. Summary judgment is never a substitute for a trial on the merits. Kronen v. Richter (1984), 211 Mont. 208, 211, 683 P.2d 1315, 1317.

Here, the materials submitted on summary judgment by defendants successfully show that there are no genuine issues of material fact. Thus, the burden of proof shifts to Batten to prove a prima facie case of fraud, constructive fraud, or negligent misrepresentation.

In order to prove fraud Batten must prove all of its nine elements. The elements are:

1. a representation;
2. its falsity;
3. its materiality;
4. speaker's knowledge of the falsity or ignorance of its truth;
5. speaker's intent that the representation be relied upon;
6. hearer's ignorance of the falsity;
7. hearer's reliance on the representation;
8. hearer's right to rely on the representation; and
9. hearer's consequent and proximate injury caused by the reliance.

Sprunk v. First Bank W. Mont., Missoula (Mont. 1987), 741 P.2d 766, 44 St.Rep. 1429. Fraud, an intentional act of misrepresentation, Gregory v. City of Forsyth (1980), 187 Mont. 132, 609 P.2d 248, can never be presumed but must be proved by a preponderance of the evidence. Wright v. Blevins (1985), 217 Mont. 439, 705 P.2d 113. Mere suspicion of fraud is not sufficient. In Re Marriage of Hoyt (1985), 215 Mont. 449, 698 P.2d 418.

Constructive fraud, unlike actual fraud, does not require dishonesty of purpose or intent to deceive. Section 28-2-406(1), MCA; Moschell v. Hulse (1980), 190 Mont. 532,

5

622 P.2d 155. A plaintiff's opinions alone do not provide a sufficient basis in fact to prove constructive fraud when there is no evidence of any breach of duty or of a fraudulent act or omission. Westlake v. Osborne (Mont. 1986), 220 Mont. 91, 713 P.2d 548. Breach of duty to disclose material facts is an indispensable element of constructive fraud. Mends v. Dykstra (1981), 195 Mont. 440, 637 P.2d 502.

Negligent misrepresentation has a lesser standard of proof. It does not require intent to misrepresent, but rather a failure to use reasonable care or competence in obtaining or communicating the information. However, liability is limited to the loss suffered by the person(s) relying on the information. See State Bank of Townsend v. Maryann's, Inc. (1983), 204 Mont. 21, 33, 664 P.2d 295, 301. In State Bank of Townsend, we cited the Restatement (Second) of Torts § 552, in part, as follows:

> The liability stated in this Section is likewise more restricted than that for fraudulent misrepresentation stated in §531. When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.

Batten sets forth several factual contentions in an attempt to prove fraud, constructive fraud or negligent misrepresentation. In summary, Batten contends that there were misrepresentations regarding "current" inventory; the condition of the premises, the capabilities of the staff, and the operation of the business; the sales volume of the business; the value of the business; the financial status of the business; the inventory of the business; the unit sales of the business and the floor plan financing; and the amount of the rent for the location of the business. Defendants maintain that Batten failed to prove that there were any

6

misrepresentations made by the defendants, whether intentional, constructive or negligent. We agree.

The District Court concluded that there were no facts presented by Batten indicating that any of the representations were false, and that since liability for fraud will attach only where a misrepresentation is material, Batten's claim fails. We agree. In a detailed memorandum, the District Court carefully considered each of Batten's contentions. Noting that "a misrepresentation is not material unless it is significant," Bails v. Gar (1976), 171 Mont. 342, 347, 558 P.2d 458, 463, the District Court concluded that even if some of the representations were false, none of them were significant. Furthermore, the District Court pointed out that many of the alleged misrepresentations were nothing more than subjective opinions. Statements of opinion are subject to the common law doctrine of caveat emptor. Dolson Co. v. Imperial Cattle Co. (1981), 191 Mont. 357, 362, 624 P.2d 993, 996. Many of the defects of which Batten complains were noticeable upon reasonable inspection, or "even a superficial investigation" as the District Court points out.

Batten failed to make a factual showing that any of the representations were false. Thus, the core element of fraud, constructive fraud and negligent misrepresentation is missing. We hold that the District Court did not err in granting summary judgment in favor of the defendants.

II

Did the District Court err in its award of costs and attorney fees to the defendants?

The District Court awarded Watts $24,743.75 in attorney fees and $4,157.78 in disbursements for a total of $28,901.53. The contract provided for reasonable attorney fees and costs. The Court, noting that this was a rather

7

high figure, explained that the costs were legitimate, and that it would not reduce the award by one-half as requested by Batten. Batten argues that the award is unreasonable. He argues that the effect of this award is punitive and that it will invoke a policy among courts that makes it impossible for valid claims to be pursued by a plaintiff who could not bear such costs.

Watts points out that the District Court properly held a hearing and considered the contract between the parties to determine the reasonableness of the fees. Furthermore, Watts contends that the District Court has broad discretion in determining what constitutes reasonable attorney fees, and that this Court shall not disturb the lower court's judgment in the absence of an abuse of discretion. Majers v. Shining Mountains (Mont. 1988), 750 P.2d 449, 453, 45 St.Rep. 283, 288. We agree.

After reviewing fully briefed arguments by both parties on this issue, the District Court specifically stated that it considered the contract between the parties which provided for "any costs or expenses, including reasonable attorney fees" prior to the court's determination. It further acknowledged that the amount awarded was high, however, the award is reasonable under the circumstances of this case, and the amount could not justifiably be reduced without being arbitrary. Batten has failed to set forth any facts to show that the District Court abused its discretion. We hold that there has been no abuse of discretion and affirm the District Court's award of costs and attorney fees to the defendant.

Batten raises additional issues on appeal which could be significant at trial. However, in light of our decision that summary judgment was proper, it is unnecessary to address those issues.

Affirmed.

8

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice William E. Hunt, Sr.

I dissent. This opinion is another attempt by the judiciary in the state of Montana to divest plaintiffs of their right to reach the jury. By stating that "the District Court pointed out that many of the alleged misrepresentations were nothing more than subjective opinions," the majority makes it possible for the District Court in a motion for summary judgment to decide as a matter of law whether a statement is one of opinion or of fact. However, in Dolson Co. v. Imperial Cattle Co. (1981), 191 Mont. 357, 363, 624 P.2d 993, 996, the case cited by the majority for the proposition that "[s]tatements of opinion are subject to the common law doctrine of caveat emptor," and in Spence v. Yocum (1982), 201 Mont. 79, 83-84, 651 P.2d 1022, 1025, this Court emphasized that the trier of fact is in the best position to determine whether a representation constitutes a statement of fact or a statement of opinion.

Both Dolson and Spence involved appeals from judgments of district court trials where the district courts sat without juries. This case, on the other hand, involves an appeal from a summary judgment. The District Court in the present case did not sit as a fact finder. Its only function was to determine issues of law, not issues of disputed fact. Summary judgment should not have been granted.

_____
Justice

- 10 -