21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
JOHN W. MARTIN CONSTRUCTION COMPANY, INC., an Arizona
corporation; Kalispell Feed and Grain, Inc., an Arizona
corporation; John W. Martin, individually; Patricia M.
Martin, individually, Plaintiffs-Appellees,
v.
NORWEST BANK KALISPELL, N.A., A national banking
corporation, et al., Defendant-Appellant.
 No. 92-36713.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1994.
Decided April 19, 1994.
As Amended Sept. 7, 1994.
 
 Before: HUG, HALL, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John W. Martin Construction Company, Inc., Kalispell Feed and Grain, Inc. of Arizona, and John and Patricia Martin (collectively "Martin") brought this misrepresentation and fraud action against Norwest Bank Kalispell, NA ("Norwest") after Norwest cut off Martin's line of credit for Kalispell Feed & Grain Supply, Inc. ("KF & G"). The issues are whether the district court erred by denying Norwest's motion for judgment as a matter of law on Martin's negligent misrepresentation and constructive fraud claims and on the compensatory damages and emotional distress awards, and by awarding attorney's fees to Martin. The district court's jurisdiction was based upon 28 U.S.C. Sec. 1332. We have jurisdiction to review pursuant to 28 U.S.C. Sec. 1291, and we reverse.
 
 I.
 
 3
 We review denial of a motion for judgment as a matter of law de novo to determine if the plaintiff's claims were supported by substantial evidence. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 113 S.Ct. 815 (1992). Our role is the same as the district court's. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). A directed verdict is proper when the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party. Erickson, 960 F.2d at 804. The evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in favor of that party. Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986).
 
 
 4
 We conclude that the evidence is insufficient to support the finding of negligent misrepresentation. Therefore, the district court erred by denying Norwest's motion for judgment as a matter of law on Martin's negligent misrepresentation claim.
 
 Martin was required to prove that:
 
 5
 a) the defendant made a representation as to a past or existing material fact;
 
 
 6
 b) the representation was untrue;
 
 
 7
 c) the defendant made the representation without any reasonable ground for believing it to be true;
 
 
 8
 d) the representation was made with the intent to induce the plaintiff to rely on it;
 
 
 9
 e) Martin was unaware of the falsity of the representation and must have acted in justifiable reliance on it;
 
 
 10
 f) as a result of that reliance, Martin sustained damage.
 
 
 11
 Kitchen Krafters, Inc. v. Eastside Bank of Montana, 789 P.2d 567, 573 (Mont.1990).
 
 
 12
 At trial, Martin argued that Norwest misrepresented the prospects of KF & G obtaining FmHA-guaranteed financing, the value of KF & G, KF & G's financial needs, and KF & G's potential. We have examined the evidence supporting each of these theories in the light most favorable to Martin, and find it insufficient.
 
 1. Denial of FmHA Application
 
 13
 At trial, Martin sought to establish that Norwest had deliberately not told Martin that the FmHA loan application had been denied, and that further applications would be denied as well, because Norwest wanted to induce Martin to inject equity into KF & G and to pledge his homes as collateral.
 
 
 14
 Prior to FmHA's final denial on February 27, 1981, Norwest clearly stated that it would "continue to pursue the present request for a $810,000 FmHA guaranty loan," but that "it would have to be understood that the proposal as it now exists would have to be amended."
 
 
 15
 Martin testified at trial that prior to entering into the purchase and sale agreement, he knew that the FmHA application by KF & G had been turned down [in December]. White and former owner Tower testified that KF & G was sold to Martin only because the application had been rejected. Martin's testimony also showed that he understood that a new FmHA application would have to be made. Thus, even if Norwest did not tell Martin that KF & G's earlier FmHA application made by Tower had been rejected for the second time, Martin clearly had been told that the application had been rejected initially by White before Martin purchased the company.
 
 
 16
 Martin does not point to evidence showing that Norwest knew that future applications would be denied. In fact, FmHA's letters suggested that an application would be granted if capital were infused from another source. To the extent that Norwest stated that the loan application would be pursued, and, with Martin's financial statement, should be approved, Norwest did not represent any past or existing fact. Kitchen Krafters, 789 P.2d at 573.
 
 2. Replacement Cost Appraisal
 
 17
 Martin relies upon evidence that a bank representative handed him a copy of the 1980 FmHA loan application and stated, "Here's what you're buying." The loan application contained an appraisal showing a replacement cost value of $2,218,400. Construing the evidence in the light most favorable to Martin, Olson's statement and Norwest's signature on the application are arguably enough to attribute the representation to Norwest. However, Olson's statement is not evidence that Norwest represented the appraisal as something other than a replacement cost appraisal. The appraisal clearly stated that it was based upon replacement cost.
 
 
 18
 Martin was required to show that a representation of Norwest was false. See Batten v. Watts Cycle and Marine, Inc., 783 P.2d 378, 381 (Mont.1989), cert. denied, 494 U.S. 1087 (1990). At trial, Martin presented correspondence between Norwest and FmHA that had not been given to Martin in which both expressed concern that a forced sale, in light of the then-extremely high interest rates, would result in a loss as the property would sell at "less than the true value of the assets"--approximately $1.5 to $1.6 million. This evidence does not indicate that the replacement cost appraisal was incorrect or that Norwest falsely represented the value of the company as a going concern. There is no evidence that Norwest made any representation of the liquidation value of the company.
 
 
 19
 3. Statements Regarding KF & G's Need for Funding
 
 
 20
 Martin argued at trial that Norwest had falsely told him that KF & G needed only $500,000, when, in fact, FmHA had estimated that a minimum of $1 million was necessary to finance the operation. FmHA again informed Norwest by telephone on February 5, 1981, that at least $1 million was needed, $500,000 of which must be in the form of equity. On February 6, 1981, Norwest stated in its Letter of Intent that it had requested the injection of $500,000 in equity because FmHA thought that it was necessary in order for FmHA to entertain a request for an additional $500,000.
 
 
 21
 These facts do not show that Norwest misrepresented KF & G's needs. KF & G asked for $810,000 in July 1980. FmHA found that this would not be enough for KF & G, "especially if significant increases in sales [were] projected." FmHA concluded that KF & G needed at least $1 million in working capital. "To have a reasonable chance of approval [of the FmHA guaranty application], at least $1 million is needed, $500,000 of which must be in the form of equity." That is, FmHA informed Norwest that KF & G needed an equity injection of $500,000 and a loan of at least $500,000 to have enough working capital. The clear meaning of FmHA's letter was that an application for $500,000 would have "a reasonable chance of approval" if $500,000 were injected independently. Norwest's Letter of Intent stated this rather clearly. Martin did not prove that there was any misrepresentation about KF & G's funding needs, on which Martin could have relied.
 
 4. Viability
 
 22
 In its Letter of Intent, Norwest stated that "under proper conditions," KF & G was "a viable company that could show a profit." This statement was clearly conditional, and does not represent a past or existing material fact, which is the first element of negligent misrepresentation. See Kitchen Krafters, 789 P.2d at 573.
 
 
 23
 Martin also failed to prove that he relied on this statement. Martin's testimony makes clear that he understood the conditional nature of the statement, and, thus, that he did not rely on the statement. He testified that he understood the letter to mean that having a line of operating credit would be the proper condition referred to by Norwest, and would be necessary for KF & G to make a profit.
 
 II.
 
 24
 Norwest also moved for judgment as a matter of law on Martin's constructive fraud claim, but the district court denied the motion.
 
 
 25
 "Constructive fraud occurs when a party to a transaction conceals from the other party material facts about the nature of the transaction." Mends v. Dykstra, 637 P.2d 502, 506 (Mont.1981) (internal quotation omitted). It consists of a breach of duty that gains an advantage to the person in fault by misleading another to his prejudice, or of any act or omission that the law specially declares to be fraudulent. Id. at 505-6; Bottrell v. American Bank, 773 P.2d 694, 706 (Mont.1989). Constructive fraud, like negligent misrepresentation, requires a factual showing that the claimed representations were false. Batten, 783 P.2d at 382. Both torts also require that the plaintiff did not know the truth regarding the matters allegedly misrepresented. Id. at 381.
 
 
 26
 Because Martin failed to prove that Norwest made false representations, created a false impression, or by its words or conduct misled Martin, the evidence was insufficient to support his constructive fraud claim, and Norwest's motion should have been granted.
 
 III.
 
 27
 Because we conclude that the evidence does not support the jury's verdict of liability, the compensatory damages and emotional distress awards must be vacated.
 
 IV.
 
 28
 The district court awarded $421,307.26 to Martin for attorneys' fees and expenses. Because we hold that Norwest is not liable for negligent misrepresentation or constructive fraud, Martin is not the prevailing party on any claim and is not entitled to fees under any theory.
 
 V.
 
 29
 The judgment of the district court is REVERSED and the case is REMANDED for entry of judgment for the defendant consistent with our opinion.
 
 
 30
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3