NO. 94-028

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

BERNARD F. CECHOVIC and JUNE C. CECHOVIC,

        Plaintiffs and Respondents,

    v

HARDIN & ASSOCIATES, INC., W. EDWARD HARDIN,
and DIXIE BULLOCK,

        Defendants and Appellants,

    and

PAMELA B. SAVILLE, n/k/a PAMELA SPRINGALL,

        Defendant, Respondent, and Cross-Appellant.

FILED

AUG 24 1995

CLERK OF ... COURT
STATE OF MONTANA

---

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and for the County of Park,
                The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

           Terry F. Schaplow, Attorney at Law, Bozeman,
           Montana; James H. Goetz and Robert K. Baldwin,
           Goetz, Madden & Dunn, Bozeman, Montana
           (for Hardin & Assoc, W. E. Hardin, and Bullock)

           Brenda R. Cole and Kent R. Douglass, Swandal,
           Douglass, Frazier & Cole, Livingston, Montana
           (for Springall)

        For Respondents:

           Calvin L. Braaksma, Landoe, Brown, Planalp
           & Braaksma, Bozeman, Montana (for Cechovics)

        For Amicus Montana Association of Realtors:

           John K. Tabaracci, Sullivan, Tabaracci,
           & O'Rourke-Mullins, Missoula, Montana

---

                  Submitted on Briefs:  March 16, 1995
                         Decided: August 24, 1995

Filed:

_____
        Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiffs, Bernard and June Cechovic, filed a complaint, and later an amended complaint, in the District Court for the Sixth Judicial District in Park County in which Dixie Bullock, Edward Hardin, Pamela Saville (n/k/a Pamela Springall), and Hardin and Associates were named as defendants. The Cechovics alleged that they sustained damages as a result of Bullock's negligent misrepresentation regarding the boundary for property they purchased from Saville. Saville filed a cross-claim against Hardin and Bullock in which she sought indemnification for any damages she might be obligated to pay, plus her costs and attorney fees. Following trial, the jury returned a verdict in favor of the Cechovics. The District Court entered its judgment and an indemnification order in favor of Saville against Hardin and Bullock. The District Court denied Hardin and Bullock's post-trial motions which were filed pursuant to Rules 50 and 59, M.R.Civ.P., and denied Saville's motion for an award of attorney fees and costs. Hardin and Bullock appeal from the judgment and post-trial orders. Saville appeals from the post-judgment order denying her attorney fees. We affirm the judgment of the District Court and its denial of the parties' post-trial motions.

We rephrase the issues on appeal as follows:

1. Was there substantial evidence to support the jury's verdict in favor of the Cechovics?

2.   Did the District Court abuse its discretion when it refused Hardin and Bullock's proposed jury instructions?

3.   Did the District Court err when it denied Hardin and Bullock's motion for summary judgment based on the statute of limitations, or when it declined to instruct the jury on that subject?

4.   Was the jury's damage award supported by substantial credible evidence?

5.   Did the jury properly award Pamela Saville damages?

Saville raises the following issue on cross-appeal:

Did the District Court err when it denied Pamela Saville's motion to award attorney fees?

FACTUAL BACKGROUND

In 1977, James Grizzard divided a parcel of land located in Park County and sold Tract 4, a 20-acre parcel, to Pamela Saville and her late husband.  Grizzard retained Tract 5, which located to the west of Tract 4.  Saville, who was not a Montana resident, had minimal involvement with Tract 4 after it was purchased.  She and her husband divided their 20-acre parcel into two lo-acre parcels--an east tract and a west tract.  In 1980, the Savilles sold the east Tract, 4B, to Jim and Gwen Handl and kept the west Tract, 4A.  Sometime in the early 1980s, Mr. Saville informed Handl that he could graze horses on Tract 4A if he would put up a temporary fence to keep them off the neighboring property.

Handl spoke to Grizzard about building a fence, and Grizzard agreed to allow Handl to construct the fence. Grizzard indicated the approximate location of the boundary pins that divided his land from the Savilles. Handl constructed the fence between two surveyor pins and pastured his horses on Tracts 4A and 4B. However, the pin to which the south end of the fence was anchored was not the actual boundary pin. As a result, the fence that Handl believed to be the boundary between Tract 4A and Grizzard's property included property that actually belonged to Grizzard.

Shortly after Mr. Saville's death in 1987, Dixie Bullock, a real estate salesperson who had recently received her real estate license and was employed by Edward Hardin, a broker, contacted Pamela Saville to request permission to show Tract 4A to a potential buyer. Bullock testified that Hardin obtained a certificate of survey that included Tract 4A and sent it to the potential buyer. Later Bullock decided to show the property to the Cechovics whom Bullock knew were interested in river front property.

On September 8 or 9, 1987, Cechovics met Bullock at her office located in Hardin's brokerage firm in Livingston, Montana. The three of them then viewed Tract 4A, which was bounded by the Yellowstone River to the south, a county road to the north, Grizzard's property to the west, and the Handls' property to the east. Because the fence Handl had constructed on the west end of the property was not located on the actual western boundary, a

4

promontory that overlooked the Yellowstone River was located within the western fence, but was actually part of Grizzard's land.

The parties disagree what was actually said by Bullock while they toured the property.

Mr. Cechovic testified that while standing on the promontory Bullock stated it would be a beautiful location for the construction of the Cechovics home. He also testified that Bullock showed them a yellow pin on the west property line and told him that the pin was the west property line pin. Mr. Cechovic also testified that Bullock showed him a pin on the eastern boundary that divided the property from the Handls' property.

Mrs. Cechovic testified that while standing on the promontory Bullock said, "[H]ow's this for a place to build your house?" Mrs. Cechovic added that Bullock pointed to the yellow pin at the southwest corner and then walked with Mr. Cechovic to the southeast pin. As a result of Bullock's alleged statements, the Cechovics stated they believed that the western fence was the boundary between Tract 4A and Grizzard's property.

Bullock testified that she did not represent that the western fence was the boundary and did not point out any survey pins. Bullock did not recall the substance of any conversations that occurred while on the promontory. However, she admitted that she assumed the western fence was the boundary and that the promontory was located on Tract 4A. She also recalled discussing the view

from the promontory.  Finally, Bullock acknowledged that she had not asked Saville about property boundaries.

After viewing the property, Bullock and the Cechovics returned to Hardin's office.  Hardin testified that Cechovics were concerned about the location of the promontory so he, Bullock, and Mr. Cechovic examined Certificate of Survey No. 491, which was a survey that included Tract 4A.  Bullock also testified that the Cechovics were concerned about the property boundary.

Cechovics, however, testified that they were not concerned about the boundaries because Bullock had pointed them out. Mr. Cechovic did state that he obtained a copy of a portion of Certificate of Survey No. 491 from the county clerk and recorder and visited the property several times.

The Cechovics decided that they wanted to purchase the property and made several offers.  Finally, after other offers were rejected, Hardin and Bullock prepared and mailed Saville a buy-sell agreement which she signed on September 14, 1987.

Saville testified that after she learned the Cechovics were interested she suggested to Bullock that they obtain a survey before finalizing their purchase.  Hardin and Bullock testified that they told the Cechovics to obtain a survey if they were uncertain about the boundaries.  Cechovics denied that they were told to obtain a survey.  They did not have the property surveyed.

The transaction closed on approximately November 9, 1987. Cechovics built their home near the location on the promontory that

6

Bullock allegedly represented was located on Tract 4A, and moved into their new home by August 1988.

Sometime in the spring of 1991, Grizzard decided to sell that part of his property which was adjacent to the Cechovics' property. In order to divide his property, Grizzard had Survco survey his land. The proper corner pin was located underneath some land in the Cechovics' yard. The survey indicated that the true eastern boundary of Grizzard's land was located to the east of the Cechovics' home. Their home, in other words, was actually located on Grizzard's property.

Mr. Cechovic testified that after he learned of the boundary discrepancy, he was told that Grizzard would sue Cechovics if the pending sale of Grizzard's property was interfered with by the location of their home. They were also advised that John Tecca, the purchaser, would not purchase the land if the problem was not resolved. Cechovics, therefore, contacted Tecca and agreed to move their home in consideration of payment by Tecca in the amount of $10,000.

On July 12, 1991, Cechovics filed a complaint, and later an amended complaint, in which they alleged that Bullock, Hardin, Hardin and Associates, Inc., and Saville had negligently misrepresented the boundary of the land they purchased. Saville was named on the basis of her status as principal in an agency relationship with Hardin and Bullock. Saville filed a cross-claim against Hardin and Bullock for indemnification from liability for

7

Hardin and Bullock's conduct, and sought a statutory penalty, as well as her attorney fees and costs.

Before the case came to trial, Hardin and Bullock moved for summary judgment based on the statute of limitations. The District Court denied that motion. Following a jury trial, the jury returned a verdict in favor of the Cechovics and awarded damages in the amount of $65,733.22. The jury also found the Cechovics contributorily negligent and apportioned one percent of fault to them, and 99 percent to Hardin and Bullock. The jury also awarded Saville damages in an amount equal to three times Hardin and Bullock's commission for the sale. The District Court entered its judgment and an indemnification order in favor of Saville and against Hardin and Bullock.

Hardin and Bullock filed motions for a new trial or a judgment as a matter of law pursuant to Rules 50 and 59, M.R.Civ.P. Saville filed a post-trial motion for an award of her attorney fees and costs based on her successful cross-claim. The District Court denied the parties' post-trial motions. Hardin and Bullock appeal from the District Court's judgment and denial of their post-trial motions. Saville appeals from the District Court's denial of her post-trial motion.

## ISSUE 1

Was there substantial evidence to support the jury's verdict in favor of the Cechovics?

We will affirm the jury's verdict if there is substantial credible evidence to support the verdict. *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287. This Court's role is not to agree or disagree with a jury's verdict. *Silvis v. Hobbs* (1992), 251 Mont. 407, 411, 824 P.2d 1013, 1015 (citing *Griffel v. Faust* (1983), 205 Mont. 372, 376, 668 P.2d 247, 249). Once we conclude that substantial evidence supports the verdict, our inquiry is complete. *Silvis*, 824 P.2d at 1015 (citing *Griffel*, 668 P.2d at 249). Substantial evidence has been defined as evidence a reasonable mind might accept as true and can be based on weak and conflicting evidence. *Silvis*, 824 P.2d at 1015 (citing *Buskirk v. Nelson* (1991), 250 Mont. 92, 97, 818 P.2d 375, 378). When we determine whether substantial evidence supports the jury's verdict, we review the evidence in a light most favorable to the party who prevailed at trial. If the evidence at trial conflicts, the jury's role is to determine the weight and credibility of the evidence. *Silvis*, 824 P.2d at 1015-16.

As Hardin and Bullock indicate, the elements of negligent representation are set forth in *Barrett v. Holland & Hurt* (1992), 256 Mont. 101, 107, 845 P.2d 714, 717-18. There, we stated that a claim for negligent misrepresentation requires proof of the following elements:

1. the defendant made *a* representation as to a *past* or *existing* material fact;

9

2.   the representation must have been untrue;

3.   regardless of [his or her] actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

4.   the representation must have been made with the intent to induce the plaintiff to rely on it;

5.   the plaintiff must have been unaware of the falsity of the representation and he must have been justified in relying upon the representation;

6.   the plaintiff, as a result of his reliance, must sustain damage.

*Barrett*,   845 P.2d at 717-18 (citing *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 165, 789 P.2d 567, 573).   Although Hardin and Bullock do not concede that Bullock misrepresented the property boundaries, the thrust of their argument is that a realtor cannot be held negligent for failing to discover that an apparent boundary was not the actual boundary.   They focus on the third element and contend that if Bullock made a misrepresentation, she had reasonable grounds to believe it was true.

In *State Bank of Townsend v. Maryann's,* Inc. (1983), 204 Mont. 21, 33, 664 P.2d 295, 301, we recognized the definition of negligent misrepresentation found at Restatement (Second) of Torts § 552 and stated that it requires a showing of the failure to exercise the care or competence of a reasonable person in obtaining or communicating information.   Relying on a comment to § 552, we added that what is reasonable, as with other negligence claims, is dependent upon the circumstances.   Generally the level of care and competence the recipient of information is entitled to expect is

10

determined in light of the circumstances and will vary, dependent upon many factors. Finally, we stated, "[t]he question is one for the jury, unless the facts are so clear as to permit only one conclusion." *State Bank of Townsend,* 664 P.2d at 302 (quoting § 552 cmt. a).

In this case, the evidence relevant to the elements of negligent misrepresentation was disputed. Mr. Cechovic testified that Bullock indicated that the pin at the southern end of the western fence marked the boundary. Bullock testified that she assumed the pin was the accurate boundary and assumed that the promontory was on Tract 4A. Saville testified that she supplied written documentation to Bullock and suggested to Bullock that the buyers have the property surveyed before finalizing the sale. According to the Cechovics, Bullock did not convey this information to them.

Testimony indicated that Hardin and Bullock obtained a certificate of survey before Bullock showed the property to the Cechovics. Although Hardin and Bullock claim that the Cechovics should have discovered the discrepancy between the certificate of survey and the fence, Hardin and Bullock either did not discover the discrepancy themselves, or failed to indicate the discrepancy to the Cechovics.

Finally, expert testimony indicated that fences are not reliable as boundaries and that boundary lines are only determined by surveys or from personal knowledge of an informed owner. David

11

Viers, a real estate broker, testified that without accurate information from a seller he would not represent a boundary to a potential buyer. He added that a sales agent or broker has a duty to disclose information and suggestions from the seller, e.g., that a survey be obtained, to potential buyers. Tony Wastcoat, another expert, testified that regulations require licensees to gather all pertinent facts and prohibits misrepresentations. He added that if he was showing rural property similar to the property in this case that he would not rely on a fence as a boundary, even if it was marked by a pin. He added that if the facts as stated in Cechovics prior depositions were true that the Cechovics established a breach of duty.

It was the jury's role to apply these facts to the instructions. Interpreting the evidence in a light most favorable to the Cechovics, we conclude that substantial evidence supports the jury's verdict that Bullock did not have reasonable grounds to believe her representations were true. Therefore, the third element of negligent misrepresentation was established.

Hardin and Bullock next argue that the fifth element was not satisfied because the Cechovics neither relied, nor could they justifiably rely on, any alleged misrepresentation. They argue, based on cases from other jurisdictions and cases which are distinguishable, that a buyer cannot rely on an alleged misrepresentation if the buyer undertakes an independent investigation because the buyer is deemed to rely on his or her own

12

investigation. Finally, they contend that an independent investigation clause, similar to the one in the contract in this case, bars a claim based on negligent misrepresentation according to our decisions in *Lowe v. Root* (1975), 166 Mont. 150, 531 P.2d 674, and *Lee v. Stockmen's National Bank* (1922), 63 Mont. 262, 286, 207 P. 623, 630.

We note that the issue of whether the Cechovics relied on, and were reasonable in relying on, Bullock's alleged misrepresentation was also a question for the jury. Based on the evidence set forth above, and the elements of negligent misrepresentation, the jury could have decided that the Cechovics relied on Bullock's representations. We will not reweigh the evidence and second-guess the jury's determination on this issue.

Next, we must determine whether the independent investigation clause bars the Cechovics' claim. Although Lee did not involve the duties of real estate licensees, Hardin and Bullock rely on language from *Lee* which stated that if a party that claims to have been deceived has done his or her own independent investigation, or had the means to ascertain the truth, reliance on a representation, however false, affords no ground for complaint. However, the point of *Lee* was that the plaintiff could not recover for fraud or misrepresentation for the defendant's failure to disclose facts that the plaintiff knew to exist. Lee, 207 P. at 630.

Although the Cechovics did visit the property several times before the sale, and did obtain a certificate of survey from the

13

county clerk and recorder's office, Mr. Cechovic testified that he did not attempt to compare the plat to the boundaries because he relied on Bullock's representations regarding the western boundary. Nor did he have the property surveyed. Unlike *Lee* and *Lowe*, the Cechovics did not undertake an independent investigation. As we more recently stated, an "'independent investigation' clause does not preclude justifiable reliance by a buyer on misrepresentations of the seller and its realtor." *Wagner v. Cutler* (1988), 232 Mont. 332, 336, 757 P.2d 779, 782 (citing *Parkhill v. Fuselier* (1981), 194 Mont. 415, 419, 632 P.2d 1132, 1135. We added in *Wagner* that where a plaintiff relied on a realtor's misrepresentations, the seller is liable based on agency principles set forth in § 28-10-602, MCA. *Wagner*, 757 P.2d at 702.

Substantial evidence indicates that the Cechovics justifiably relied on Bullock's representations regarding the property boundary and that the promontory where the Cechovics ultimately built their home was on the property Bullock represented for sale on behalf of her principal. Mr. Cechovic stated that he did not conduct an independent investigation because he was confident that Bullock's representations were accurate.

Hardin and Bullock claim that the error was obvious because the records indicate over 160 feet less river frontage than the fence boundary would have indicated. However, they do not explain how their oversight in this regard was reasonable if the

14

discrepancy was so obvious. In light of the fact that Hardin and Bullock, who are licensed real estate professionals, did not discover the error, it would be unjust to impose that requirement on the Cechovics who claim they relied on Bullock's representations.

We conclude that substantial evidence supports the jury's determination that the Cechovics relied on, and were justified when they relied on, Bullock's misrepresentations. Contrary to Hardin and Bullock's assertions, and assertions made by the Montana Association of Realtors, our decision does not mean that a broker is responsible to have property surveyed in every case. We merely conclude that, based on the evidence presented in this case, there was an adequate factual basis for the jury's finding that these defendants negligently misrepresented the boundary of the property purchased by Bernard and June Cechovic.

## ISSUE 2

Did the District Court abuse its discretion when it refused Hardin and Bullock's proposed jury instructions?

The District Court has discretion when it decides how to instruct the *jury*, taking into consideration the parties' theories, and we will not overturn the court's decision absent an abuse of discretion. *Arnold v. Boise Cascade Corp.*(1993), 259 Mont. 259, 267, 856 P.2d 217, 222. When we examine whether jury instructions were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions

15

given and the evidence at trial. *Story v. City of Bozeman* (1993), 259 Mont. 207, 222, 856 P.2d 202, 211 (citing *Feller v. Fox* (1989), 237 Mont. 150, 156, 772 P.2d 842, 846).

Hardin and Bullock contend that the District Court erred when it failed to instruct the jury about the Cechovics' duty to investigate, their actual investigation, and their right to rely on representations of the boundary location. Their arguments are similar to arguments made regarding the first issue and will not be repeated at length.

Hardin and Bullock contend that the District Court erred when it refused their proposed instructions H-8 and H-10. Proposed instruction H-8 stated:

> A purchaser of property is under a duty to make a reasonable investigation of the property prior to purchasing it.

Proposed instruction H-10 stated:

> The buy/sell signed by the Plaintiffs contained an independent investigation clause which reads as follows:
> "Purchaser enters into this agreement in full reliance upon his independent investigation and judgment. Prior verbal representations or agreements do not modify or affect this agreement."
> If you find that the Plaintiffs had ample opportunity to investigate the property for themselves, they may not rely on any alleged misrepresentation of the Defendants.

The District Court refused H-8 because it concluded that *Batten v. Watts Cycle&Marine, Inc.* (1989), 240 Mont. 113, 783 P.2d 378, which was cited by defendants as authority for that instruction, did not stand for the principle stated in the instruction. The District

16

Court refused H-10 after concluding that it was a comment on the evidence.

Hardin and Bullock claim that the court removed from the jury's consideration the question of whether the Cechovics had the opportunity to, or did engage in, an independent inquiry, and whether they actually or reasonably relied on the alleged misrepresentation in light of their own investigation. That argument is belied by the facts that the jury was instructed regarding contributory negligence; that issue was argued to the jury; and, it found the Cechovics partially at fault for their own damages.

We agree with the District Court's conclusion that *Batten* does not stand for the proposition set forth in proposed instruction H-8. In *Batten*, we recognized that the defects complained of were discoverable upon a reasonable inspection and concluded that the plaintiff failed to indicate sufficient facts that any representations were false. Therefore, we concluded that the core element of fraud, constructive fraud, and negligent misrepresentation was missing. *Batten*, 783 P.2d at 381-82. Our statement that the defects were discoverable was not the basis for our holding in *Batten* since we concluded that factual misrepresentations were not proven. Even if *Batten* had stood for the proposition for which it was cited by Hardin and Bullock, we have held that language from this Court's opinions is not intended for use as jury

17

instructions. *Hunsacker v. Bozeman Deaconess Foundation* (1978), 179 Mont. 305, 333, 588 P.2d 493, 509. We conclude that the District Court did not abuse its discretion when it refused proposed instruction H-8.

Hardin and Bullock also claim that the District Court erred when it refused their proposed instruction H-10. That instruction contained a direct quote from the buy-sell agreement Cechovics signed. Cechovics objected, and the District Court agreed, that H-10 commented on the evidence. The District Court stated that Hardin and Bullock were entitled to argue to the jury about the contractual language in support of their contention that the Cechovics should have inquired, but stated that it would be improper for the court to comment on the evidence. We agree with the District Court.

If the District Court allowed the instruction it would have repeated and emphasized a direct quote from the buy-sell agreement that was admitted as an exhibit at trial. To have done so would have violated principles that prohibit a district court from impermissible comments on the evidence. *See* Rule 614(b), M.R.Evid., *Clark v. Norris* (1987), 226 Mont. 43, 53, 734 P.2d 182, 188 (stating that the District Court cannot comment on the evidence).

We hold that the District Court did not abuse its discretion when it refused Hardin and Bullock's proposed instructions H-8 and H-10. After examining the instructions in their entirety, and as

18

a whole, we conclude that the District Court adequately explained the legal principles advanced by the parties at trial.

ISSUE 3

Did the District Court err when it denied Hardin and Bullock's motion for summary judgment based on the statute of limitations, or when it declined to instruct the jury on that subject?

A summary judgment order is interlocutory, but is appealable after a final judgment is rendered. *Riley v. Carl* (1981), 191 Mont. 128, 131, 622 P.2d 228, 230. Our standard of review of a district court's summary judgment ruling is *denovo*. *Spain-Morrow Ranch, Inc. v. West* (1994), 264 Mont. 441, 444, 872 P.2d 330, 331 (citing *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214).

Hardin and Bullock contend that the Cechovics' claim is barred by the three-year statute of limitations for negligence which should apply to this case. Section 27-2-204(1), MCA. They assert that the elements necessary for a claim of negligent misrepresentation accrued in 1987 when the property was purchased, and since suit was not filed until 1991, the District Court erred when it denied their motion for summary judgment. In the alternative, they claim that the statute of limitations raised a factual issue about which the jury should have been instructed.

Cechovics respond that their claim was not barred by any statute of limitations because the elements of their claim did not occur until they were damaged in March 1991. They argue that the two-year statute of limitations for fraud set forth at § 27-2-203,

19

MCA, applies, and the discovery rule tolls the statute until the fraud or misrepresentation is discovered. Since the boundary problem was not discovered until the spring of 1991, they contend that their complaint was filed on time.

Neither party's position is entirely correct. We have, in the past, applied the two-year statute where it was either directly, or by inference, agreed upon by the parties. *See Williams v. DeVinney* (1993), 259 Mont. 354, 362-63, 856 P.2d 546, 551-52; *R.H. Grover, Inc. v. Flynn Ins.* Co. (1989), 238 Mont. 278, 286, 777 P.2d 338, 343; *White v. Lobdell* (1984), *208* Mont. 295, 306, 678 P.2d 637, 642. We have also previously stated that in Montana an action for negligent misrepresentation is an action for fraud. *Bushnell v. Cook (1986)*, *221* Mont. 296, 301, 718 P.2d 665, 668. Finally, as the Cechovics indicate, the Federal District Court for the District of Montana has stated that a claim for negligent misrepresentation is governed by the two-year statute of limitations. *Shupak v. New York Life Ins. Co.* (D. Mont. 1991), 780 F. Supp. 1328, 1333.

However, these statements in our previous cases are inconsistent with our recognition that negligent misrepresentation is similar to other negligence causes of action. *See Barrett, 845* P.2d at 717-18. Negligent misrepresentation requires proof of elements that are obviously different than the elements required to prove fraud. Indeed, as we have stated, negligent misrepresentation involves breach of a reasonable standard of care, not

20

intentional misrepresentation. Because negligent misrepresentation is couched in terms of negligence, we conclude that the three-year statute of limitations for negligence applies.

However, we also conclude that the District Court correctly denied Hardin and Bullock's motion for summary judgment because damages were not sustained in this case until 1991; a cause of action does not accrue until all elements of the claim have occurred; and the period of limitations begins to run when the cause accrues. Section 27-2-102(1)(a) and (2), MCA. In Montana, a claim or cause of action arises when all elements exist or have occurred. We recently reiterated this principle and recognized that in negligence cases the earliest date a cause of action could accrue is when a person suffers damages from the alleged negligent conduct. *Uhler v. Doak* (Mont. 1994), 885 P.2d 1297, 1303, 51 St. Rep. 1315, 1319.

The Survco survey in 1991 revealed that the property on which the Cechovics built their home in fact belonged to Grizzard. At that point, the Cechovics were forced to move their home. Prior to that time, Cechovics had no cause of action against Bullock. *Uhler*, 885 P.2d at 1303. Their complaint was filed later in 1991, well within the three-year statute of limitations.

We hold that the District Court was correct when it denied Hardin and Bullock's motion for summary judgment based on the statute of limitations.

21

Hardin and Bullock claim, in the alternative, that the District Court erred because it failed to instruct the jury regarding the statute of limitations. They contend that when evidence conflicts, the issue of whether a cause of action is barred by a statute of limitations is a question for the jury. *Stagg v. Stagg* (1931), 90 Mont. 180, 300 P. *539; Hill v. Squibb & Sons* (1979), 181 Mont. 199, 592 P.2d 1383.

However, based on our previous discussion, we conclude that there was no conflict in the evidence. We conclude that the District Court did not abuse its discretion when it refused to give Hardin and Bullock's proposed jury instructions regarding the statute of limitations.

<u>ISSUE 4</u>

Was the jury's damage award supported by substantial credible evidence?

The amount of damages awarded is properly left to the jury and this Court will not substitute its judgment for the jury's unless the amount awarded is so grossly out of proportion that it shocks the conscience of this Court. *Simchuck v. Angel Island Comm. Ass'n* (1992), 253 Mont. 221, 230, 833 P.2d 158, 163 (citing *Gunning v. General Motors Corp.* (1989), 239 Mont. 104, 107, 779 P.2d 64, 66). In *Simchuck, we* also reiterated the principle that this Court will review the record in the light most favorable to the prevailing party to determine if substantial evidence supports the jury's verdict. *Simchuck,* 833 P.2d at 163 (citing *Gunning,* 779 P.2d at 67).

22

Hardin and Bullock contend that the jury improperly awarded damages for lost river frontage based on testimony from Jim Burke, the Cechovics' expert appraiser.  They assert that the Cechovics received the exact acreage and amount of river frontage that they thought they were getting, based on the plat of the land they reviewed, and therefore, have sustained no damages for lost river frontage.  Saville joins in this contention.  We disagree.

In Montana, every person who suffers detriment from another's unlawful act or omission may recover damages.  Section 27-1-202, MCA.  Detriment is defined as a loss or harm suffered in person or property.  Section 27-1-201, MCA.

Cechovics point out that a primary attraction of the land was Bullock's representation that the river front promontory was included, and that there is no comparable location on the property they eventually received.  Jim Burke testified that the most valuable feature of the property was the river frontage.  He stated that when parties purchase river front property they buy it for the river frontage, not the acreage behind it.  In addition, the jury viewed the property pursuant to § 25-7-401, MCA. As a result, the jury not only heard expert testimony, but observed the views and quality of the Cechovics' homesite before and after they moved their home.

Interpreting the evidence in a light most favorable to the Cechovics,  we conclude that substantial evidence supports the

jury's damage award and the award does not shock this Court's conscience

ISSUE 5

Did the jury properly award Pamela Saville damages?

The jury's verdict and damage award in favor of Saville against Hardin and Bullock must be upheld if supported by substantial evidence. *Simchuck*, 833 P.2d at 163. Saville filed a cross-claim against Hardin and Bullock in which she claimed damages based on §§ 37-51-321, and -323(2), MCA. The District Court instructed the jury on this issue and the jury awarded Saville $7110, which was three times the amount of Hardin and Bullock's commission for sale of her property.

Hardin and Bullock contend that the court erred when it instructed the jury on this issue and, in the alternative, that the jury's verdict and judgment are not supported by the evidence They claim that Saville was not a "person aggrieved" pursuant to § 37-51-323(2), MCA, and that a real estate licensee is not liable for honest or natural mistakes. *Van Ettinger v. Pappin* (1978), 180 Mont 1, 13, 588 P.2d 988, 996.

Section 37-51-323(2), MCA, provides:

In case any person in a civil action is found guilty of having received any money or the equivalent thereof as a fee, commission, compensation, or profit by or in consequence of a violation of any provision of this chapter, he shall in addition be liable to a penalty of not less than the amount of the sum of money so received and not more than three times the sum so received, as may be determined by the court, <u>which penalty may be</u>

24

recovered in any court of competent jurisdiction by any
person aggrieved.

(Emphasis added.) Violations which are forbidden are listed in
§ 37-51-321(1), MCA. The jury was instructed about the following
violations:

> (b) making any false promises of a character likely
> to influence, persuade, or induce;

> iii 'offering real property for sale or lease
> without the knowledge and consent of the owner or the
> owner's authorized agent or on terms other than those
> authorized by the owner or the owner's authorized agent
> .

The District Court's Instruction No. 33 stated that if the jury
found that Bullock or Hardin engaged in conduct prohibited by
either of the above two enumerated subsections, then Saville was
entitled to recover a penalty of one to three times the commission
she paid to the realtors.

Hardin and Bullock claim that based on our decision in *Van
Ettinger*, Saville was not a "person aggrieved" pursuant to
§ 37-51-323, MCA. In *Van Ettinger,* the buyer sued the broker who
represented to the buyer that an easement appurtenant with the
property for sale included the right to use a swimming pool.
However, prior to closing, the buyer discovered that the neighbor,
upon whose property the pool was located, refused to allow the
buyer to use the pool. The buyer filed suit against the broker for
fraud for representing the easement for use of the pool. This
Court held that the buyer could not recover because he had waived
his rights and had independent knowledge, before closing, which

25

precluded reliance on the broker's statements. *Van Ettinger*, 588 P. 2d at 995. We also stated that the buyers were not aggrieved persons under the Real Estate License Act because they failed to establish that the easement did not exist and added that the buyers could not recover because they closed the transaction with knowledge of problems concerning the easement. Finally, we stated that while the Real Estate License Act should be construed to lend maximum efficacy to the enforcement of fiduciary relationships in the real estate profession, penalty provisions would certainly envision willful misconduct as opposed to a natural or honest mistake. *Van Ettinger*, 588 P.2d at 996.

Here, unlike *Van Ettinger*, the Cechovics did not know about the misrepresentations before closing the transaction, and did not waive their rights to rely on Bullock's statements. In addition, the evidence in this case warrants the jury's finding that Bullock breached fiduciary duties she owed to Saville, her principal.

Furthermore, we conclude that the Montana Real Estate License Act envisions penalties without proof of willful misconduct. The Act states that any person aggrieved may recover a statutory penalty from the licensee. Section 37-51-323(2), MCA. Likewise, that Act prohibits a licensee from making any false promises of a character likely to influence, persuade, or induce a buyer and from offering real property for sale without the knowledge and consent of the owner or on terms other than those authorized by the owner. Section 37-51-321, MCA. Evidence was introduced that a jury could

26

interpret to be violative of these provisions. Accordingly, the District Court did not abuse its discretion when it instructed the jury on this issue.

We also conclude that Saville was a person aggrieved under the plain language of the statute. Hardin and Bullock are subject to provisions of the Montana Real Estate License Act. We have held that the Real Estate License Act provisions set a standard of conduct that licensees must conform to, and a violation is sufficient reason to deny a broker a commission. *Lyle v. Moore* (1979), 183 Mont. 274, 599 P.2d 336; *Carnell v. Watson* (1978), 176 Mont. 344, 349, 578 P.2d 308, 311. Substantial evidence was introduced to indicate that Hardin and Bullock violated the Real Estate License Act and their duty to Saville. After their misrepresentation was discovered, Cechovics' complaints named Saville as a party who should be held liable for Bullock's alleged misrepresentation. We have already concluded that the Cechovics' misrepresentation claim was supported by substantial evidence and caused Cechovics' damages. Therefore, we conclude that Saville was a person aggrieved from a licensee's violation of provisions of the Montana Real Estate License Act.

We also conclude that, contrary to our statement in *Van Ettinger*, in order to recover the statutory penalty, Saville was not required to prove an intentional or malicious violation of the Act's provisions. We affirm the District Court's decision to instruct

27

the jury regarding this issue and its judgment in accordance with the jury's verdict.

CROSS-APPEAL ISSUE

Did the District Court err when it denied Pamela Saville's motion for her attorney fees?

Saville filed a cross-claim against Hardin and Bullock in which she requested her attorney fees. This Court has stated that attorney fees are not normally recoverable unless a specific statute or contractual provision provides for recovery of attorney fees. *Lane v. Smith* (1992), 255 Mont. 218, 226, 841 P.2d 1143, 1148. Saville has not indicated a statute which mandates that she recover her attorney fees. She does, however, claim that a contractual provision in the listing agreement she signed with Hardin and Bullock provides for recovery of attorney fees. The relevant language of the listing agreement states:

> In the event of any suit or action on this contract, it is agreed between us that the court, whether trial or appellate, may allow the prevailing party therein such sum as may be adjudged that party's reasonable attorney's fees.

Use of the word "may" ordinarily renders a court's award of attorney fees to a prevailing party discretionary. *See Gaustad v. City of Columbus* (1994), 265 Mont. 379, 383, 877 P.2d 470, 472. Here, however, the District Court determined that, while Saville prevailed, the action was not "on the contract;" on that basis, the court concluded that the attorney fee provision was inapplicable. We review a court's legal conclusions to determine whether they are

28

correct. *In re Marriage of Barnard* (1994), 264 Mont. 103, 106, 870 P.2d 91, 93.

Saville asserts that she is entitled to fees based on our prior decision in *Lane,* 841 P.2d at 1148. In *Lane,* the underlying claim was based on a breach of the listing agreement. On that basis, the district court awarded attorney fees to the prevailing party under a contract provision substantially similar to that at issue here. We affirmed.

The District Court in this case rejected Saville's claim for attorney fees because the action was not for breach of the listing agreement. In her cross-claim, Saville did allege that she entered a contract with Hardin and Bullock who breached fiduciary duties, as well as statutory provisions of the Montana Real Estate License Act, and requested statutory penalties, as well as her attorney fees. However, the Cechovics' underlying claim was based on misrepresentation. In her cross-claim, Saville pleaded that if the Cechovics' allegations of misrepresentation were true, then Hardin and Bullock breached duties they owed her. Her claims are necessarily based on the Cechovics' claims which sound in tort, not contract. Therefore, we affirm the District Court's decision not to award Saville's attorney fees.

We affirm the judgment of the District Court. For the reasons set forth above, we also conclude that the District Court did not abuse its discretion when it denied Hardin and Bullock's motion for

29

a new trial and judgment as a matter of law pursuant to Rules 50 and 59, M.R.Civ.P.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

30