No. 02-742

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 123N

ARTHUR AND EMILEE ZAPEL,
DON LEESE, AND NEKA LEESE,

       Plaintiffs and Appellants,

    v.

GERALD PARKER and LEONARD HAMILTON,
Individually, d/b/a GEORGETOWN LAKE ESTATES,

       Defendants and Respondents,

    v.

NELSON LUMBER COMPANY, A Washington Corporation,

       Respondent.

APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Granite, Cause No. DV 2000-19
                The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              J. Allen Bradshaw, Esq., Bradshaw Law Firm, Philipsburg, Montana

       For Respondents:

              Gregory G. Schultz, Esq., Petit and Schultz, PLLP, Missoula, Montana

       For Respondent:

              Robert J. Jim Sewell, Jr., Esq., Smith Law Firm, Helena, Montana

                  Submitted on Briefs:  May 29, 2003

                           Decided:  May 11, 2004

Filed:

_____
                    Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1    Pursuant to Section 1, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Arthur and Emilee Zapel (the Zapels) and Don and Neka Leese (the Leeses) brought separate complaints against Gerald Parker and Leonard Hamilton individually--d/b/a Georgetown Lake Estates--(hereinafter referred to as "GLE") in the Third Judicial District, Granite County.  GLE answered the complaints and brought a third-party complaint against Nelson Lumber Company (Nelson).  Thereafter, the Zapels and Leeses' cases were consolidated and Nelson moved to dismiss the action.  The District Court granted the motion, treating it as a motion for summary judgment.  The Plaintiffs appeal and we affirm.

¶3    We restate the issues on appeal as follows:

¶4    1.  Did GLE negligently misrepresented property sold to Plaintiffs?

¶5    2.  Did GLE breach the covenant of seisin?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6    In July of 1983, Nelson entered into an agreement to sell all of Section 2, Township 5 North, Range 14 West (Section 2) in Granite County for a subdivision to Gerald V. Parker (Parker) and Leonard Hamilton (Hamilton).  The contract for deed between Nelson and Parker and Hamilton provided that Nelson was to subdivide the property, including

2

recording the appropriate instruments, blazing all tract lines, and conducting a survey to set all tract corners for a subdivision. Nelson hired William Bayer (Bayer) to do the survey work and Buck Browning built the roads under Bayer's supervision. Parker stated, in his supplemental affidavit, that sometime after closing in 1984, he and Bayer visited the northern boundary of the subdivision "in order to locate the northeastern corner pin of Tract 25 in order to set an identifying lot number sign on the proper boundary at the road edge." Parker further stated, in his affidavit, that "Mr. Bayer found and identified for [Parker] the northeast corner pin for Tract 25."

¶7    In 1992, the Zapels purchased lot 25 from GLE. That same year, Don and Beverly Leese purchased lot 18 and Neka Leese purchased lot 24 from GLE.[1] Lot 24 is located in the very northeast corner of Section 2, lot 25 borders 24 to the west, and lot 18 borders 25 to the west. In their affidavits, the Leeses and Zapels stated that GLE had represented to them that three strips of land, 30' by 660', 30' by 270', and 30' by 300', on the north side of each lot were part of their respective lots and that a private road, Marmot Road, would be conveyed to them with the property, which could be used only by subdivision lot owners and their guests. Marmot Road was present before Nelson sold the property to Parker and Hamilton and it runs along the northeastern boundary line of Section 2 servicing the lots in that area.

¶8    After the Leeses and Zapels purchased the lots, Steven and Debbie Peters (the Peterses), property owners to the north of lots 24 and 25, commissioned a survey which

---

[1]  Future references to "the Leeses" will include Don, Beverly, and Neka Leese.

3

revealed that the northeast and northwest corner pin markers of lot 25--which would also be the pin markers for the northwest corner of lot 24 and the northeast corner of lot 18--were misplaced about 30' north of where they should have been as indicated by the certificate of survey referenced in the Leeses and Zapels' deeds. With the pins correctly positioned, the Zapels and Leeses lose the 30' strips of land and a portion of Marmot Road that runs on the Peterses' property, just north of lot 25, and Bill Metesh's property, just north of lot 18. The Peterses, in their affidavit, indicated that they have "no intention of selling and/or granting an easement to Marmot Road . . ." and that they had allowed the Leeses and the Zapels to use Marmot Road for one year until the Leeses and Zapels could build a road into their lots but that that year had ended so at anytime the Peterses "plan to fence off Marmot Road so it cannot be used by anyone."

¶9     In July and August of 2000, the Zapels and the Leeses, filed separate complaints against GLE alleging several causes of action including, negligent misrepresentation and breach of the covenant of seisin due to the loss of the 30' strips of land and the failure to convey Marmot Road. GLE's answer denied all claims and raised various defenses. GLE alleged, in particular, that the Leeses and Zapels had received, by deed, exactly what they had purchased by contract. In addition, GLE brought a third-party complaint against Nelson. GLE sought complete indemnity from Nelson because, pursuant to the contract for deed between Nelson and Parker and Hamilton, Nelson bore all responsibility for subdivision and survey.

4

¶10   Thereafter, the Leeses and Zapels' cases (hereinafter collectively referred to as "the Appellants") were consolidated by stipulation of the parties and Nelson brought a motion to dismiss GLE's third-party complaint alleging that the statute of limitations under, §§ 27-2-204 and 27-2-208, MCA, had expired and that Nelson was not vicariously liable. The District Court denied this motion, stating that the statute of limitations had not begun to run because the Appellants had not shown that they had been damaged. Because the Appellants had not shown damages, the District Court requested that the Appellants provide a statement of damages or the case would be dismissed.

¶11   The Appellants, in February of 2002, submitted a statement of damages which included affidavits from Steven and Debbie Peters, Arthur Zapel, Don Leese, Neka Leese, and Thor Sichveland, a licensed real estate broker familiar with property values in Georgetown Lake Estates. GLE responded to the statement of damages and Nelson again moved to dismiss. The District Court granted the motion because the Appellants had not shown damages and had, therefore, failed to state a claim upon which relief could be granted.[2]  The Appellants appeal from that ruling.

---

[2]  Although the matter came before the District Court on a motion to dismiss, the District Court concluded that "Pursuant to M.R.Civ.P. 12(b)[,] this Court can consider the motion before the Court as being a Motion for Summary Judgment.

5

## STANDARD OF REVIEW

¶12  Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P. 2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. To succeed on a summary judgment motion, the moving party had to demonstrate that no genuine issues of material fact existed as to the Appellants' claims. Rule 56(c), M.R.Civ.P.

## DISCUSSION

### ISSUE ONE

¶13  *Did GLE negligently misrepresent lots 24, 25, and 18 to the Appellants?*

¶14  The Appellants argue that their complaints should not have been dismissed because they have a valid negligent misrepresentation claim. In its December 2001 Order, the District Court stated, as to the Appellants' negligent misrepresentation claim, "it appears from the record that plaintiffs have not suffered a loss." The District Court then granted them 60 days "to present their claims and a basis for those claims." The Appellants submitted a statement of damages, which included their affidavits from Steven and Debbie Peters, Arthur Zapel, Don Leese, Neka Leese, and Thor Sichveland, but the District Court found the statement insufficient. On appeal, the Appellants insist that they did suffer damages and that their affidavits submitted as their statement of damages prove this. We conclude it is not necessary to discuss damages.

6

¶15 We have held that a claim for negligent misrepresentation requires proof of the following elements:

1. the defendant made a representation as to a past or existing material fact;

2. the representation must have been untrue;

3. regardless of [his or her] actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

4. the representation must have been made with the intent to induce the plaintiff to rely on it;

5. the plaintiff must have been unaware of the falsity of the representation and he must have been justified in relying upon the representation;

6. the plaintiff, as a result of his reliance, must sustain damage.

*Cechovic v. Hardin & Associates, Inc.*, 273 Mont. 104, 112, 902 P.2d 520, 525. The Appellants affidavits all indicate that they were shown property different from what they received "via a sales presentation, sales literature, and survey markers." Even assuming these actions qualified as a representation that the Appellants' lots included the 30' strips of land and that it was an untrue representation because the pins were misplaced, it is not at all apparent that GLE "made the representation without any reasonable ground for believing it to be true." *Cechovic*, 273 Mont. at 112, 902 P.2d at 525.

¶16 The contract between GLE and Nelson provided that Nelson was to subdivide the property. Nelson hired Bayer to set the tract corners, and once that was completed, Bayer located lot twenty-five's northeast corner pin marker for Parker. It is difficult to discern at what point Parker should have realized the pin markers were misplaced when the individual

7

who was hired to do the survey work personally located one of the "misplaced" pin markers for Parker. The Appellants have failed to demonstrate that Georgetown made the representation, again, assuming it was such, "without any reasonable ground for believing it to be true." *Cechovic*, 273 Mont. at 112, 902 P.2d at 525. In addition, the record is also devoid of any indication that Georgetown made the representations "with the intent to induce" the Appellants to rely on the misrepresentation. *Cechovic*, 273 Mont. at 112, 902 P.2d at 525. Appellants needed to do more than present the District Court with self-serving statements.

¶17    Because the Appellants have not proved the third and fourth elements of negligent misrepresentation, it is not necessary for us to analyze the other elements of negligent misrepresentation or explore the merits of the Appellants' lengthy arguments regarding damages. Accordingly, we agree with the District Court, but for different reasons, that Appellants do not have a negligent misrepresentation claim.

## ISSUE TWO

¶18    *Did GLE breach the covenant of seisin?*

¶19    The Appellants insist that the covenant of seisin was breached because a private road was promised to them during a sales presentation and they did not receive a private road. Georgetown argues that the Appellants do have access to a road, Marmot Road, and that a permanent easement or dedicated road does exist over Marmot Road as per the agreement between Nelson and Parker and Hamilton. Georgetown further argues that to the extent that

8

Marmot Road "veers outside the subdivision boundary, that small portion has long been established by prescriptive use."

¶20     Appellants appear to argue that we should not look at the language in the contract between the Appellants and GLE but we should look, instead, at discussions between the parties because the Appellants were *told* they would receive a dedicated road in a sales presentation and did not. We see no reason to look beyond the contract language. We have held that a contract's language governs its interpretation if the language is clear, explicit, and unambiguous. *Yellowstone Bank of Absarokee v. Morse* (1986), 226 Mont. 126, 128, 733 P.2d 1310, 1312 (citing *Proctor v. Werk* (1986), 220 Mont. 246, 248, 714 P.2d 171, 172); § 28-3-401, MCA. The Appellants' deeds reference the certificate of survey for the appropriate tract of land; it reserves, for the grantors, an interest in mineral rights; and it indicates that the lot is subject to restrictions, easements, and certain covenants. We see nothing unclear or ambigious in this deed's language. If the Appellants thought they would have a private road to use, they should have made sure that such language was included in the deed.

¶21     Concerning GLE's argument that the Appellants have a permanent easement over Marmot Road, we find it unpersuasive. The contract for deed between Nelson and Parker and Hamilton does state that "[a] permanent easement or dedicated road shall be assured over the existing road [Marmot Road] from the east point of Section 2, across Section 1 . . . to the public road across Georgetown Lake Dam." However, the Appellants' deeds do not reference any easement in Marmot Road. The deeds read that the Appellants take the

properties "[s]ubject to restrictions, reservations, and easements apparent or of record . . . ." Appellants may have a prescriptive easement, as GLE insists, over the Peterses and Bill Metesh's property; however, because the appropriate parties are not before this Court to adjudicate that issue, we decline to speculate on the merits of that argument.

¶22 Accordingly, we agree with the District Court that there was no breach of the covenant of seisin.

¶23 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE